# THE BALTIMORE AND SUSQUEHANNA RAIL ROAD COMPANY, *vs.* ALBERT P. WOODRUFF.

A prayer that "if the jury believe from the evidence, that the damage to" the property of the plaintiff "was occasioned by fire communicated from the engines of, or by the agent or agents of the defendant," then, &c., is defective, because it *assumes* that *damage was done* to the property of the plaintiff.

The court could not *assume* that the plaintiff's property was damaged in the

Balto. and Susquehanna Rail Road Co., *vs.* Woodruff.

manner complained of, even if the proof established the fact beyond controversy, because to do so would be an invasion of the rights of the jury.

In an action against a rail road company for damages from fire communicated to plaintiff's property from the company's locomotive *by negligence,* the plaintiff offered to prove, "that *before* the occurrence of the fires upon his farm, given in evidence, fire had been communicated by defendant's engine to the property of *other persons* on the road." HELD:

That this evidence was inadmissible, either to prove that defendant's engine created the fire in controversy, or to rebut the defendant's proof of care and diligence, though such proof may have been so loose and indefinite as to be illegal.

The offering of improper evidence by one party, can never justify the introduction of similar evidence by the other; irrelevant testimony cannot be admitted as an answer to irrelevant testimony.

The act of 1837, ch. 309, made a rail road company responsible in damages for property injured by fire, caused by an engine on the road, whether there was negligence or not. The act of 1838, ch. 244, provides, that the company shall be responsible, unless they can prove to the satisfaction of the tribunal before which the suit is tried, that the injury has been done *"without any negligence"* on their part. HELD:

That the last act being, in regard to negligence, inconsistent with the first, therefore, in that respect, repeals it, and restores the rules of the common law, except so far as to cast the *onus* of proving the absence of negligence on the defendant.

The word *"negligence"* has different meanings in relation to different causes of action; in some cases it means a very slight absence of care and prudence, in others the absence of reasonable care, and again such want of care as makes gross negligence.

The degree of negligence requisite to render a rail road company liable in damages for fire occasioned by its locomotives to property on the line of the road, is that which results from a want of reasonable care and diligence, and not that arising from the absence of the slightest or least care or caution.

The words without any *"negligence"* in the act of 1838, ch. 244, must be construed with reference to the class of cases to which the act refers, and they therefore mean *without any negligence occasioned by the want of reasonable care.*

By *reasonable care and diligence* is meant, having engines properly constructed, in good order, with suitable fixtures for preventing injuries by fire; the spark-catchers, such as are known to the company to have been used and approved of, and best calculated to prevent the emission of sparks, while allowing sufficient draft to create steam enough to propel the engine at proper speed; and such care and diligence in using the locomotive upon the road, as would be exercised by skilful, prudent, and discreet persons, having control of the engine, regarding their duty to the company, and having a proper desire to avoid injuring property along the road.

Balto. and Susquehanna Rail Road Co., *vs.* Woodruff.

It being proved that at the time the fires complained of took place, *coal* was used *as an experiment upon one rail road* leading to the city of Baltimore, and *wood* upon all others, and that coal made fewer sparks than wood, it was HELD:

That a prayer which required the company to show that when the fires occurred, their " engines were propelled by the use of that fuel then in use for such purposes in the city of Baltimore, least likely to communicate fire to property along the road," is defective, because it must necessarily have led the jury to conclude that the company was obliged to use *coal*.

If the fire was communicated without negligence on the part of the company, or if they took the *usual and proper precautions to prevent as far as practicable* the communication of fire from their engines, they are not responsible, and prayers to this effect, there being some evidence tending to prove care and diligence, should have been granted.

The act of 1838, ch. 244, does not give any new *cause* of action, nor a new *action* to recover damages for an injury known to the common law, but simply changes a rule of evidence, by releasing the plaintiff from proving negligence if the fact of the fire is established, and casts the *onus* upon the defendant of showing proper diligence.

By this act, when the fire is proved, the law raises the presumption of negligence, and therefore the charge of negligence in the declaration is proved by showing that the fire was occasioned by the defendant.

APPEAL from Baltimore county court.

This was an action of *trespass on the case,* instituted by the appellee against the appellant, on the 30th of April 1847, to recover damages for injuries caused by fire communicated to the plaintiff's property by the defendant's locomotives. The declaration avers, that the defendant, by its "agents, conductors and servants, so carelessly, improperly and negligently, drove, conducted and propelled, their cars, engines and locomotives, that through such carelessness, negligence, and improper conduct, sparks and fire from said engines were blown and cast upon the fences, cord-wood, timber and trees, of the plaintiff, and thereby set fire to the same, and consumed and injured them," to the extent of $500. The plea was *non cul.*

*1st Exception.* The plaintiff proved, that in the spring of 1845, two fires occurred upon his farm through which the rail road passed, shortly after the cars had passed by, which consumed trees, timber and fences, to the value of about $500;

that both fires began at the edge of the rail road, and other facts tending to show that they were occasioned by sparks from the engines, or through the carelessness of the men employed on them in throwing burning cotton and pieces of wood from them whilst in motion. The company then proved, that in the spring of 1845 they used the best spark-catchers then known, which were examined every night, and repaired if necessary, and that the locomotives were never run without them. The parties then offered the proof relating to the fuel used on the locomotives at that time, which is stated in the opinion of this court. The plaintiff then proved, that the spark-catcher used upon the locomotive which passed last before the fires occurred, was not Johnson's and Flecher's, which is considered the best and safest, but a modification of it, by which the draft, steam and speed, are increased, and the sparks emitted, and the danger of fire are also increased. The plaintiff then offered to prove, that before the occurrence of the fires upon his farm, as given in evidence, fire had been communicated by defendant's engine to the property of other persons on said road, which had been burnt in consequence thereof, to which offer and evidence defendant objected, but the court, (LE GRAND, A. J.,) overruled the objection, and permitted the evidence to be given to the jury, to which over-ruling and permission defendant excepted, and prayed the court to sign and seal this its bill of exception, which is done accordingly, this 21st of February 1848. There was a scroll for a seal, but no signature by the judge.

*2nd Exception.* The commencement of this exception, which was signed and sealed by the judge, is stated in the opinion of this court. The plaintiff thereupon offered two prayers:

1st. If the jury shall believe from the evidence that the damage to the trees, fences, grass, &c., of the plaintiff, was occasioned by fire communicated from the engines of, or by the agent or agents of the defendant conducting said engines, the fact of such damage by fire is *prima facie* evidence of care-lessness or negligence upon the part of the defendant, and throws upon it the burden of proving that said damage was

not the result of its negligence or carelessness, or that of its agents, and in case it shall fail to supply such proof, the plaintiff is entitled to recover.

2nd. That if the jury shall find from the evidence that the damage to the trees, fences, grass, &c., of the plaintiff, was caused by fire communicated from the engines of, or by the agent or agents of the defendant engaged in conducting said engines at the time of said fires, then it is incumbent on the defendant to prove, not only that the engines and spark-catchers were generally kept in good order and condition for the business upon which the defendant was then engaged, but further to prove, that at the times of the fires given in evidence in this cause, the engines of the defendant, from which said fires were communicated, were supplied with the most approved spark-catchers then in use known to the defendant, and that they were propelled by the use of that fuel then in use for such purpose in the city of Baltimore, least likely to communicate fire to property along the road; and also, that the agent or agents of the defendant who were then conducting said engines, acted upon such occasions with the utmost prudence, care and caution, and that if the disaster in question was occasioned by the least negligence, or want of care or caution, in any one or all of the above particulars, the defendant is liable in this action.

The defendant then offered five prayers:—1st. That the plaintiff must prove to the satisfaction of the jury that the fires complained of were caused by the defendant.   2nd and 3rd. These are stated in the opinion of this court.   4th. This prayer, to the effect that the plaintiff cannot recover, because he has shown no title to the trees or fences injured, was abandoned by the appellant.   5th. That the plaintiff can only recover the value of his interest in the trees, as tenant in possession without title to the freehold or inheritance.

The court granted the plaintiff's prayers, and the first and fifth of defendant's, but rejected the others, to which grant and refusal defendant excepted.   The verdict was for the plaintiff for $300 damages, and judgment accordingly, from which the defendant appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Coleman Yellott* for the appellant.

The first bill of exceptions was not signed, but the second, which is both signed and sealed, specifically refers to and adopts it, and in this respect this case differs from those in 2 *Md. Rep.*, 13, and 2 *H. & J.*, 345.   There is no statute of this State upon the subject, and the statute of *Westminster*, 31*st of Edward*, 1, only requires the judge to *seal* the exception, not to *sign* it.   3 *Bl. Com.*, 372.   *Evan's Pr.*, 310. The court has adopted the *scroll* to this exception as its *seal*, by saying in the second that the first is duly signed and sealed.

*1st Exception.*  The evidence admitted was a surprise upon the defendant, and irrelevant to the issue.   It was of other fires *before* those in question, not *at that time.*   The issue was as to defendant's communication of fire to the *plaintiff's* property, not to that of other persons, and there was therefore error in admitting it.   8 *G. & J.*, 311, 313, 314.

*2nd Exception.*  The act of 1837, ch. 309, is void so far as the appellant is concerned, because it violates its charter. 11 *G. & J.*, 403, 404.   Under its charter, (act of 1827, ch. 72,) the appellant had the right to place locomotives upon its road, and was not responsible except for negligence, and the act of 1837 abridges this right, and is therefore unconstitutional.   2 *Story's Com. on Cons., sec.* 1385.   Again, this act, so far as negligence is concerned, is repealed by that of 1838, ch. 244, because the provisions of the latter are on this point inconsistent with it.   *Dwarris on Statutes*, 9 *Law Lib.*, 30. The latter act is also out of the case, because it changes the rule of the common law, and the declaration does not show upon its face that the plaintiff proceeds under this statute, which should be the case before he can avail himself of it. 1 *Chitty's Pl.*, 372, 373.   *Dwarris on Statutes*, 25, (9 *Law Lib.*, 2.)   2 *Saunders on Pl. and Ev.*, 830, 831.   2 *Ev. Harris*, 480, 497.   This applies to the first and second prayers of the defendant.   Its third prayer should have been granted,

whether the declaration was under the act or at common law. 2 *Cushing*, 542, 543.

The plaintiff's *first* prayer violates the common law rules of evidence, by throwing the onus of proving the absence of negligence upon the defendant, by the mere showing of the fact of the fire, and, apart from the act of 1838, it was erroneously granted. 13 *Pet.*, 191. 8 *Johns.*, 421. The case of stage-coach proprietors does not apply, because there is in such cases *an implied contract to carry safely.* *Story on Bailments*, sec. 601, (*a.*)

The objections to the second prayer are two-fold:—1st. The degree of care and caution required is overstated. *Story on Bailments*, sec. 601, (*a.*) 2 *Cushing*, 542. 19 *Conn.*, 566, 576, 577. 15 *Johns.*, 255. 2nd. The question of negligence is not left to the jury. There is no proof of any *usage* to use coal, and it was not negligence to use wood. The whole question as to what was proper care, should have been left to the jury upon all the circumstances in proof. 1 *Denio*, 91. 1 *Strobhart's Law Rep.*, 356, 358.

But both these prayers are objectionable, because they *assume that injury was done* to the property of the plaintiff. 1 *Md. Rep.*, 161.

*St. George W. Teackle* for the appellee.

The questions decided in the first exception are not before this court, because that exception is not signed by any judge of the court below. The very purpose of an exception is, that it should be *the act* of the court who made the decision. The *scroll* was made by the counsel who drew the exception, and did not become the seal of the court until adopted by the judge whose decision is excepted to, and the *evidence* of that adoption is his *signature*. In the early history of the common law the judges could not write, and hence they used their particular *seals* to identify their acts, and such is the practice in England to the present day. Here a *scroll* is used for a seal, and if the doctrine on the other side be correct, the counsel drawing up the exception might make the court

Balto. and Susquehanna Rail Road Co., *vs.* Woodruff.

decide anything he chose, and though the court below should refuse to sign it, this court would still be bound by it, and therefore compelled to reverse decisions which were in fact never made. But this is no longer an open question, it is put at rest by the case in 1 *Md. Rep.*, 13.

But suppose the questions are before this court, the evidence was admissible:—1st. Because all the proof of the plaintiff to show that the fires were occasioned by the engines of the defendant was *circumstantial evidence*, and his case was to be established by such evidence alone. The *capability* of the engines to communicate fire was *one link* in the chain, and the plaintiff proposed to prove it by witnesses who had seen fire communicated by them to property along the road, and in this view the evidence was clearly admissible. 2nd. It was admissible as *rebutting evidence*. The defendant had in defence given in evidence its general care and vigilance to prevent fires to property along its road, and if it could do this, it was clearly competent for the plaintiff to *rebut* such evidence, by proof that the engines had *frequently* set fire to the property of persons on the road.

The second exception incorporates the evidence in the first exception, and upon the prayers we insist:—1st. As to the acts of 1837 and 1838, that the latter is a mere supplement to the former, and therefore does not repeal it, and that both are constitutional. When did this company acquire the constitutional right to kill, cripple and *burn?* These acts merely affect *remedies*, and are analogous to the insolvent and usury laws of the several States, which have been decided to be constitutional. 2nd. These acts settle the questions raised upon the second exception. They make the defendant liable without any proof of negligence by the plaintiff, except the fact that the injury was caused by defendant's engine. The first does not exempt the defendant, even if it could prove by the clearest evidence that the injury was the result of inevitable accident. The latter exempts it only upon proof that the injury complained of has been committed "without *any negligence.*" 3rd. The prayers do not *assume* that the damage

32      v.4

was done, and therefore take this from the jury; they mean the *damage mentioned* in the *evidence*, and the jury are required by them to find from the *evidence*.

The second and third prayers of defendant could not have been granted, because there was no evidence upon which they could be based. The only proof was of general care and diligence, but the act of 1838 says the only evidence which shall exempt is proof that there was not "*any negligence.*" There is no hardship in this, because the company has its conductors, firemen and engineers, to disprove the negligence. Again, this act only changes the character of the proof, not the nature and character of the remedy, the 'declaration was therefore properly brought at common law, and it need not conclude *contra formam statuti.* 4 *Gill,* 406.

*J. Mason Campbell* for the appellant, in reply.

*1st. Exception.* The *issue* is not upon *a firing*, but upon a *negligent* firing, of the *plaintiff's* property, and is so put in the declaration. Now how can evidence of firing other persons property tend to prove this issue? If this were all the evidence in the case, could the jury find this issue one way or the other? It was not used as *rebutting* evidence, and cannot be, for our proof was of diligence *at the time* the fires occurred, and to rebut this it cannot be shown that *before* that time we had set fire to other property.

*2nd Exception.* We contend that the suit was brought at *common law,* and that the *rules of evidence* of the common law apply to it. The *nar* charges the cause of action to be the *negligently* setting fire to the plaintiff's property. The declaration incorporates *negligence,* and is therefore at common law, because the act of 1838 does not require the charge of negligence. The first prayer in fact assumes that the plaintiff was to prove negligence. The fact of firing is not proof of negligence. 8 *Barr.,* 366. These prayers are not good even under the act of 1838, for it lays down no such le as they assume, nor does it say *what shall constitute evidence of negligence.* Under it, negligence is no part of the

plaintiff's case. The real meaning of it is simply to shift the burthen of proof.

Without negligence and *"without any negligence"* mean the same thing. Negligence in some cases is the want of ordinary care, and the rule adopted elsewhere in reference to rail road companies in such cases as these, is well stated in 2 *Cushing*, 541, 543, 544. *Reasonable care and caution* only is required under all the circumstances of the case. 19 *Conn.*, 569. 1 *Denio*, 91. 4 *Harrington*, 252.

The second prayer puts the test too high. Upon the facts in the case, the court should have submitted it to the jury without instructing them what constituted negligence, as the cases above cited show, and as was done by the defendant's second and third prayers.

Again the *frame* of these prayers is evidently defective, as they assume that damage was done. 2 *Md. Rep.*, 82. 3 *Do.*, 162.

But is the *first* exception in the case? It presents the evidence; the scroll is the seal, and is the same as that used to the second, and by authenticating that the judge authenticates the seal to the first. It matters not where the signature is placed; the locality is nothing. But what is the effect of rejecting the first bill? If it is out of the case where is the evidence? *that* requires the authentication of the judge also. If void as to the questions decided by the court it is void for every purpose, and there was therefore no evidence to sustain the prayers, and the case must be reversed. Oh this point see 11 *G. & J.*, 479. 7 *Cranch*, 242. 2 *G. & J.*, 376. 7 *G. & J.*, 353. 2 *Brock.*, 75. 6 *Cranch*, 233.

ECCLESTON, J., delivered the opinion of this court.

The first bill of exceptions in this case concludes in the usual form and has a scroll for a seal, but is not signed by the judge. This, the appellee contends, renders it so defective that the decision of the court below, in regard to the admission of the evidence objected to, is not properly before us for revision. Nevertheless, he insists, that in considering

the prayers contained in the second exception, we are authorised to look at the testimony set forth in the first, because the second begins by saying: "The plaintiff and defendant then to sustain the issues on either side respectively, offered the evidence given by each, and set out in the first bill of exception."

The argument on the part of the appellant assumes, that the first bill of exceptions is perfect in itself, as it has a seal, although not signed by the judge; but if this be not true, any defect arising from the want of the judge's signature is cured by the language of the subsequent exception, which is regularly signed and sealed. The appellant insists further, that if the defect contended for by the appellee can avail to prevent a revision of the point presented in the first exception, this court cannot look at the testimony contained in it for any purpose. If void in reference to the question decided by the court, it is void as a bill of exceptions in every respect, which would leave the case entirely without testimony to sustain the plaintiff's prayers, and consequently a reversal must follow.

But we need not stop to enquire which of these positions is correct; for whether the first exception is in the case, or out of it, the judgment below must be reversed, on account of error in both the prayers of the plaintiff.

The first prayer begins thus: "If the jury shall believe from the evidence that the damage to the trees, fences, grass, &c., of the plaintiff was occasioned by fire communicated from the engines of, or by the agent or agents of the defendant," &c. In this it is assumed that damage was done to the trees, &c., of the plaintiff, and the jury are only left to enquire whether such damage to the trees, &c., *of the plaintiff* was occasioned by fire. This assumption, on the part of the court, was an interference with the province of the jury, who possessed the exclusive right of deciding upon the proof, whether any damage had been done to the property of the plaintiff. In *Gaither vs. Martin*, 3 *Md. Rep.*, 162, this court said: "No matter how clear and satisfactory the proof was to establish the sale, the court could not assume that it took

place, as it would be an invasion of the rights of the jury." See also 6 *G. & J.*, 70. 6 *Gill*, 259. 3 *Md. Rep.*, 176, and the cases there cited. These authorities establish very clearly that this prayer must be considered erroneous, even if the proof established the fact beyond controversy, that the plaintiff's property was damaged in the manner complained of. It is therefore of no importance in reference to this matter whether the testimony set out in the record is legitimately before us or not. In either alternative the result would be the same.

The second prayer of the plaintiff is subject to the same objection. Indeed its beginning is in the very language of the first, except using the word "caused" instead of "occasioned."

As this case must go back for a second trial, we will express our views upon the questions presented in the record as if they were regularly before us, unaffected by any objection to the first bill of exceptions.

The fire complained of took place in the spring of 1845. After all the testimony in the cause had been given, except that which constitutes the point of the first exception, the plaintiff offered to prove, "that before the occurrence of the fires upon the plaintiff's farm, as given in evidence, fire had been communicated by the defendant's engine to the property of other persons on said road, and that it had been burnt in consequence of such fire." This proof was objected to, but the court permitted it to be given.

It is said this evidence was proper for the purpose of authorising the jury to believe, that if the engine of the company created the fires offered to be proved, it also occasioned the one in controversy. And if not admissible with that view, it was so for the purpose of rebutting the proof given by the defendant to show care and diligence.

The point in controversy or in issue was, whether the property of the plaintiff was fired by the engine of the defendant by negligence. The plaintiff being required only to prove

the firing; the defendant to show the want or absence of negligence.

The books are full of cases, showing how careful the courts have been to refuse the admission of collateral matters in evidence. And this refusal is founded upon principles of sound reasoning. Collateral facts are calculated to introduce a wide scope of controversy, drawing off the mind of the jury from the point really in issue, and the adverse party not having notice before the trial that such evidence is to be produced, cannot be prepared to rebut it. See 1 *Greenlf. on Ev.*, sec. 52. In this section, and in the authorities cited below, cases will be found where this species of proof was rejected, when the facts offered to be introduced were quite as pertinent to the issue as in the present instance. 3 *Phill. on Ev.*, 443, 444. (*Cow. and Hill's note,* 330.) 8 *G. & J.*, 311, 313, 314.

It is by no means a necessary consequence, that because the engine did set fire to the property of another, it also was the cause of burning that of the plaintiff. The only legitimate inference from the former fire, would be to show that a locomotive engine running upon a rail road is an instrument which can, and probably will, set fire to property along the road. The very nature of such an engine is sufficient to satisfy a jury of that fact. And if the jury are to be considered as knowing nothing on the subject without proof, the appropriate testimony would be to describe the construction of the engine, the means of propelling it, and the manner in which it throws out sparks of fire when in motion.

The evidence offered is no less objectionable in reference to the question of negligence, than to that of the firing itself. There is no time specified. We do not know whether it was one month or five years before the injury in dispute. And the instances alluded to might have occurred without the least negligence, which the defendant would have been able to show by satisfactory proof, if notified of an intention to introduce them. Or if they had been the result of great carelessness, nevertheless, the injury complained of in this suit might have occurred when the agents of the company were using

all proper precaution. For it cannot be denied that such an engine may communicate fire when running in the best condition.

But the plaintiff argues, that the proof of the defendant on the subject of care and caution, is so loose and indefinite as to render it illegal, and therefore the evidence objected to was proper as rebutting proof. Admitting he is right as to the defendant's testimony, still his was not admissible. In *Walkup vs. Pratt*, 5 *H. & J.*, 56, the court held, that "if the counsel for the appellee had offered improper evidence, the court, on application, would have rejected it, but the offering improper evidence by one of the litigant parties, never can justify the introduction of similar evidence by the other party; such doctrine would lead to endless confusion, and destroy all the established rules of evidence." And in *Stringer vs. Young's Lessee*, 3 *Peters' Rep.*, 336, 337, it was decided that irrelevant testimony would not be admitted as an answer to irrelevant testimony.

In the argument upon the prayers in the second bill of exceptions, the plaintiff endeavored to sustain the court below, under the provisions of the acts of 1837, ch. 309, and 1838, ch. 244. The defendant's counsel insisted, that the act of 1837 was unconstitutional; and if not, that it was repealed by the act of 1838. They also contended, that this is an action at common law, and not under the statute, and therefore the rules of the common law are only applicable to it, the provisions of neither statute having any influence on the questions involved in the controversy. If mistaken in this view, they claim that the last act is the only one to be considered as having any bearing on the case, and under that they are entitled to a reversal.

The act of 1837 was intended to make a rail road company responsible, in damages, for property injured by fire, caused by an engine on the road, whether there was negligence or not. The act of 1838 provides, that the company shall pay damages for injuries by fire, "unless said company can prove to the satisfaction of the justice, magistrate's court, or other

tribunal, before which said suit may be tried, that the injury complained of has been committed without any negligence on the part of said company or their agents."

Whether the first of these acts is unconstitutional or not, is a matter of no importance on the present occasion. In regard to negligence, the last act is certainly inconsistent with the first, and therefore repeals it in that respect. The legislature deeming the first too severe and rigorous, thought proper again to make the absence of negligence a defence, and for that purpose passed the act of 1838. In doing which, we think, they have restored the rules of the common law in relation to negligence, except only releasing the plaintiff from the obligation to prove it, and casting the onus of proving its absence upon the defendant. This, however, is denied by the plaintiff. He thinks because the act requires a defendant to prove the injury was done "without any negligence," the common law rules on the subject are not now to guide us; but a successful defence cannot be made, except by showing there was not the *least degree of negligence;* or, in other words, that the *utmost care and caution* were used. He relies much upon the word "any" as sustaining his view. But we must recollect that this word *negligence* has very different meanings in relation to different causes of action known to the law. In some cases it means a very slight absence of care and prudence, in others the absence of reasonable care or caution, and again, such a want of care as makes gross negligence. When, therefore, this word is used in the statute, in order to ascertain its appropriate meaning, we should look at the class of cases to which it has reference. In doing this, we shall find, by the authorities, that in suits similar in character to the present, the degree of negligence which is requisite to render a party liable in damages, is that which results from a want of reasonable care and diligence, and not that arising from an absence of the slightest or least care and caution. Under such a rule of construction, the words "without any negligence," must mean without any negligence occasioned by the want of reasonable care.

DECEMBER TERM, 1853.        257

Balto. and Susquehanna Rail Road Co., vs. Woodruff.

If this be so, it follows necessarily that the second prayer of the plaintiff is erroneous in assuming it to be necessary for the defendant to prove, that at the time of the fire the agents of the company acted with the utmost prudence, care and caution, and that if the disaster in question was occasioned by the least negligence, or want of care or caution, the defendant is liable in this action. It would be difficult to frame more stringent rules than are to be found in this prayer, and we think them such as the law will not justify. The prayer is also defective in requiring the company should show, that when the fires took place the engines were propelled by the use of that fuel then in use for such purpose in the city of Baltimore, least likely to communicate fire to property along the road. The proof on this subject is, that in the city of Baltimore, on the Baltimore and Ohio rail road, bituminous coal was used as an experiment, but wood was in use on the Philadelphia, Wilmington and Baltimore rail road, and the Baltimore and Washington rail road; and on the southern rail roads they used wood, not coal. The plaintiff having proved that the coal made fewer sparks than wood, and was less calculated to communicate fire, the prayer must necessarily have led the jury to conclude that the defendant was obliged to use coal. They were not left to the inquiry whether wood was in ordinary use upon rail roads, or whether coal had been used, and found appropriate and suitable for such purposes; but they were told that to be exonerated from damages the defendant must prove, the engines were propelled by the use of the fuel then in use in the city of Baltimore, least likely to communicate fire.

In using the expression *reasonable care and diligence*, we mean, having engines properly constructed and in good order, with suitable fixtures for preventing injuries by fire; the spark-catchers such as are known to the company to have been used and approved of, and such as are best calculated to prevent the emission of sparks, allowing at the same time a sufficient draft upon the fire to create steam enough for the purpose of propelling the engine at a proper speed. And we mean also

33    v.4

such care and diligence in using the locomotive upon the road, as would be exercised by skilful, prudent and discreet persons, having the control and management of the engine, regarding their duty to the company, and having a proper desire to avoid injuring property along the road. In regard to this subject, we would refer to the judicious remarks of Chief Justice Shaw, in *Bradley vs. The Boston and Maine Rail Road*, 2 *Cush.*, 541, 542. This authority is cited simply as to the degree of negligence sufficient in such cases to render a defendant liable.

The reasoning contained in the preceding part of this opinion brings us to the conclusion, that the second and third prayers of the defendant ought to have been granted. The second asserts the position, that the plaintiff could not recover if the jury were satisfied "the fire was communicated without negligence on the part of the defendant." The third contains the proposition, that there was no negligence on the part of the defendant, if the *usual and proper precautions* were taken, to prevent, *as far as practicable*, the communication of fire from the locomotive. If, according to the second prayer, the fire occurred "without negligence," there surely was no liability on the part of the defendant. And if, in the language of the third prayer, to *prevent as far as practicable* the communication of fire from the engine, the company took the *usual and proper precautions*, how could the defendant be responsible in damages? The language is not simply the usual precautions to prevent the fire, but *the usual and proper precautions* to prevent it *as far as practicable*.

These prayers have been resisted by the plaintiff, not only by asserting the legal propositions they contain to be erroneous, but because there was no evidence to show a want of negligence. The first objection has already been disposed of. In regard to the last, we think there is some evidence tending to prove care and diligence, whether it was sufficiently strong to satisfy the jury that there was no negligence, we are not now called upon to decide.

Although it may seem to be somewhat out of the proper

order of things to go back to the first prayer of the plaintiff, after having discussed the subsequent parts of the case, nevertheless it is necessary for us to do so on the present occasion.

The point intended to be presented in that prayer is, that the damage by fire is *prima facie* evidence of carelessness or negligence on the part of the defendant, and that the defendant must prove there was not such carelessness or negligence, otherwise the plaintiff is entitled to recover.

The defendant admits this to be a correct view of the law under the act of 1838; but it is insisted, that the declaration is not under this act, and as it charges negligence in the common law form, the plaintiff is bound to establish it by proof, and cannot rely upon any legal inference of its existence, arising from proof of the fire itself. To this we cannot yield our assent. The statute does not give any new cause of action, nor does it give a new action to recover damages for an injury known to the common law. It simply changes a rule of evidence, by releasing the plaintiff from proving negligence, if the fact of the fire is established, and casts the *onus* upon the defendant of showing there was no negligence, or, in other words, that there was proper diligence. By this, when the fire is proved, the law raises the presumption of negligence, and therefore the charge of negligence in the nar is proved, by showing that the fire was occasioned by the defendant. In an action for a libel or in slander, malice is a necessary ingredient; and *Starkie,* in his work on *Slander,* at *marg. page* 433 of the 1*st Vol.,* considers it necessary to a complete declaration that it should contain an allegation of malice, and the books of forms are in accordance with Starkie. In his 2*nd Vol., marg. pages* 52 *and* 53, it will be seen that in some cases of slander malice is a legal inference from the words spoken, and in such instances it is unnecessary to give evidence of malice in fact or actual malice, unless it may be to aggravate the damages.

We have said there was error in the beginning of the plaintiff's first prayer, in assuming what should have been submitted to the jury. But for this error the prayer would

have been correct, according to the view we have expressed in regard to the legal proposition intended to be presented by the instruction asked for.

We are relieved from considering the fourth prayer of the defendant, as it has been abandoned.

*Judgment reversed and procedendo awarded.*