# The Baltimore and Ohio Railroad Company vs. Sally E. Dorsey.

*Responsibility of a Railroad company for Injury done by Fire occasioned by its Engines, &c.—Article 77, section 1, of the Code.*

The 1st section of Article 77 of the Code of Public General Laws, which makes railroad companies responsible for injuries by fire occasioned by their engines upon any of their roads, applies not only to a case where a party has suffered damage by fire communicated by sparks flying from the smokestack, or by sparks, coals or fire dropping from, or flying out of the furnace or ash pan of the engine, but also to a case where the fire was communicated from coals or cinders thrown from the engine by the servants of the company having charge of it at the time; and it the party damaged establishes by sufficient proof that the fire thus originated, and that he suffered damage thereby, the *onus* is cast upon the company of proving that such damage was not the result of its negligence or carelessness, or that of its agents.

Appeal from the Circuit Court for Howard County.

This was an action instituted by the appellee to recover for damage done her property by fire, alleged to have been caused by burning coals thrown from the engines of the appellant. The facts of the case are sufficiently presented in the opinion of the Court. An exception was taken by the defendant to the rejection by the Court (Hayden, J.) of its fifth, sixth and seventh prayers. The fifth prayer is set out in the opinion of the Court, the others are as follows:

Sixth. That there is no evidence in this case that any coals, ashes, cinders, or fire, were placed or thrown, by the fault or negligence of any of the defendant's servants, at the side of the defendant's railroad track, and at the distance of five or six feet therefrom.

Seventh. That the plaintiff cannot recover in this case, because there is no evidence legally sufficient to show that the damage complained of was caused by fire

occasioned by the engines or carriages of the defendant, or through want of reasonable care and diligence on the part of the defendant or any of its servants.

A judgment having been rendered for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER and ALVEY, J.

*Thomas Donaldson*, for the appellant.

*Levin Gale*, for the appellee.

MILLER, J., delivered the opinion of the Court

This is an action to recover for damage done to the plaintiff's property by fire, alleged to have been caused by burning coals thrown from the defendant's engines. The fire took place on the 9th of April, 1869, near the railroad track where it follows a bend of the Patapsco between Elysville and Dorsey's Run, not far from the foot of steep hills forming part of the plaintiff's farm. It appears to have commenced near the middle of the bend, and spread over about fifty acres of the plaintiff's land doing considerable damage, especially to growing wood and timber, and proof was offered on both sides as to the amount of loss.

With respect to the origin of the fire it was proved on the part of the plaintiff, by two witnesses, who, on the day in question, were at work near the railroad track, about four or five hundred yards from the west end of the bend, that between twelve and one o'clock, they saw a fire burning at a point on the bend near the railroad, that they went immediately to the place, and when they reached it, the fire had burnt about ten feet up the hillside south of the railroad, and they found south of the track and about five or six feet therefrom, some coal cin-

ders, of the same kind of coal as is used in locomotives, which they attempted to take up, but found they were too hot to be held; that they then attempted to put out the fire, but without success; that about five minutes before the fire was so discovered, a freight train had passed west, and about five minutes before that train, another freight train had also passed the same way; that there were no houses on this bend, nor any nearer than the west end of the west bridge over the Patapsco. On cross-examination they said there was but a single track on the bend, that when they first saw the fire, there was a smoke near the railroad, that they reached the place in three or four minutes after they saw the fire, and then leaves and old brush were burning on the bank of the railroad, that they did not see either of the freight trains spoken of, stop on the bend, that they were facing them when they came west, but did not see them when they were on the bend. The plaintiff also proved on cross-examination of one of the defendant's witnesses, that the fire appeared to have commenced about the centre of the curve and was fiercest there, that there were no buildings on the curve, and the place is very wild and broken.

On the part of the defendant it was proved that all the engines at that time used with freight trains running west were properly constructed with the most approved appliances for arresting sparks, and well arranged fire or ash pans; that they were constantly and regularly inspected, and always kept in repair; that the mechanics employed in the duty were skilful and reliable men; that the engines all had apparatus for throwing water into their ash pans when they were to be raked out, and they could only be raked out when the engine was standing still, and then the ashes and cinders after being wet, would fall just at the side of, and next to the rail; that only four freight trains passed west over this bend between twelve and two o'clock on that day, and on each

there was a conductor, engineer, fireman and brakeman, all of whom were selected and approved by a master mechanic, who had general charge of the defendant's machinery at Mt. Clare, and were skilful and careful officers. Some of these parties were on the stand as witnesses. The conductor of the first train, and the only one on that train examined, says, he does not recollect whether we stopped on this bend on that day or not, that he was on the rear car, and did not observe any fire there, always rake out at water stations, that he does not know where the then engineer and fireman of the train now are, they are not in the company's service. The testimony of those on the other trains is to the effect, that it is customary to rake out at water stations, and to let water into the pans first; that they did not stop or do not remember to have stopped on this curve on that day, and certainly did not stop there to rake out; and they all concur in stating they had no recollection of seeing any fire there when they passed.

Eight instructions were asked for by the defendant, all of which were granted, except the fifth, sixth and seventh, and the only exception taken is to their rejection. The fifth is as follows:

"That if the jury shall believe from the evidence, that the damage complained of was incurred by reason of fire, and that the said fire was not occasioned by any of the engines or carriages of the defendant, either by sparks flying from the smokestack, or by sparks, coals or fire dropping from or flying out the furnace or ash pan, but that said fire was caused by coals, ashes, cinders or fire, placed or thrown by some person or persons at the side of the defendant's railroad track, and at the distance of five or six feet therefrom, then the burden of proof is on the plaintiff to show that the said coals, ashes, cinders or fire, were so placed or thrown by the fault or negligence of some of the servants of the defendant."

We do not readily perceive what precise legal proposition this prayer announces or was intended to present. If it means to assert, that if the jury found the coals were put or thrown in the place stated, by servants or employees of the company, who had no concern with its engines or trains, or when not engaged in the management and control of them, that then the *onus* of proving negligence on the part of such parties was on the plaintiff, the defendant had the full benefit of that law by the granting of its eighth prayer, which embodies that very proposition. Again, if the fire originated from these coals by the side of the track, and the jury could have been allowed to find from the testimony, that they were placed there by some one *not in the defendant's service*, as might by possibility have been the case, then the conclusion of the prayer respecting the burden of proof, if not other parts of it, was wholly unnecessary and misleading. It should have said in plain terms, that if the jury so found, then the defendant was not responsible for the injury complained of, and the plaintiff could not recover; for there were no facts or circumstances proven or shown to exist tending to show that any servants of the company had any connection whatever with such an act on the part of one not in the defendant's employment. It was not proved that any one other than the company's servants was on either of the passing engines or trains, or that any other workmen or employees of the company were along that part of the road, at or about the time of the fire. If placing the coals there was the act of a stranger it must have been his own unaided act, for which he alone, and not the defendant was responsible, and if it was intended by this prayer to present that view of the case, it should have been framed in plainer and more explicit terms, and for that single purpose. But if the intent was to assert the proposition, that the first section of Article 77 of the Code, when applied to

this case relieved the plaintiff from the *onus* of proving
that the fire resulted from the negligence of the defen-
dant or its agents, *only in case* it was occasioned by
sparks flying from the smokestack, or by sparks, coals or
fire dropping from or flying out of the furnace or ash
pan of the engine, and *not if caused by* burning or hot
coals coming from the engine in any other way as by being
cast or thrown therefrom, by those who at the time had
the control and management of it when in use on the
road, then we cannot yield our assent to that construction
of the law.   The section of the Code referred to, declares
that a railroad company shall be responsible for injuries
by fire occasioned by its engines or carriages upon its
road, unless the company can prove to the satisfaction of
the tribunal before which the suit is tried, that the injury
complained of was committed without any negligence on
the part of the company or its agents.   Looking to the
obvious design of such legislation it would be a very
narrow construction of this provison to hold that a fire
is not *occasioned by an engine,* if it originates from coals
thrown from it along the side of the road by those
having charge of it when in use.   It is not our purpose
to enlarge further upon the construction and effect of this
section of the Code.   It has in other particulars, received
the careful consideration of this Court in *Woodruff's
Case,* 4 *Md. Rep.,* 242, and in *Lamborn's Case,* 12 *Md.
Rep.,* 257.   All that we mean now to decide is, that it
applies to a case where a party suffers damage by fire
communicated either directly from the engine itself in
the modes stated in this prayer, or from coals or cinders
thrown therefrom by the servants of the company having
charge of it at the time.   If the party establishes by suffi-
cient proof the fact that the fire thus originated, and that
he has suffered damage thereby, then the *onus* is cast
upon the company of proving that such damage was not
the result of its negligence or carelessness, or that of its

agents. For these reasons, we find no error in the rejection of the defendant's fifth prayer.

All that need be said upon the sixth and seventh prayers is that they were properly rejected, because in our opinion, the evidence we have already stated, was legally sufficient to authorize the jury to find therefrom, that the fire was occasioned by the defendant's engines, in one or other of the modes above specified, and in that case the law raises the presumption of negligence on the part of the company or its agents. *Balto. & Susq. Railroad Co. vs. Woodruff*, 4 *Md. Rep.*, 259. There was no error in the ruling rejecting these prayers.

*Judgment affirmed.*