Filed Dec. 16, 1884.

---

No. 8576.

## THE PENNSYLVANIA COMPANY v. WHITLOCK.

NEGLIGENCE.—*Proximate Cause.*—*Fire.*—Where A. negligently, but accidentally, sets his own building on fire, and while it is burning the fire is, by force of the wind, carried to B.'s building, which is thereby destroyed, A. is not liable to B., the wind being an independent intervening cause, and, therefore, A.'s negligence is not the proximate cause of the injury.

From the Porter Circuit Court.

*J. Brackenridge* and *J. R. Carey*, for appellant.

*T. J. Merrifield* and *J. D. McLaren*, for appellee.

NIBLACK, J.—Complaint by Robert Whitlock against the Pennsylvania Company in two paragraphs.

The first paragraph charged that the defendant was a railroad corporation, and as such was, and had been for the five years then immediately preceding, operating, managing and controlling the Pittsburgh, Fort Wayne and Chicago Railway, running through the county of Laporte, together with all the depots, station-houses and other property appertaining to said railway; that for a long time prior to the 9th day of January, 1875, the defendant kept, maintained and controlled a station-house on the line of said railway at the town of Wanatah, in said county of Laporte, for the accommodation of passengers and for convenience in the transportation of freight, using, also, a part of the same for the ticket and telegraph offices; that said station-house was, during all the time named, under

The Pennsylvania Company v. Whitlock.

the immediate charge of an agent and servant of the defendant, who caused the same to be heated with a large woodburning stove, the pipe of which ran into a flue in the building which had been so carelessly, negligently and unskilfully constructed as not to prevent the escape of sparks and flames through the sides thereof, and which was, and had been, maintained in such an unsafe and dilapidated condition as to greatly endanger such station-house and property adjacent thereto, of all which the defendant had notice; that the defendant, so having notice of the unsafe and dangerous condition of said flue, refused to repair the same; that the plaintiff was, at the time herein above stated, the owner, and in the actual occupancy, of a large two-story frame hotel building, in said town of Wanatah, of the value of $6,000, and of furniture and other personal property used in said hotel building of the value of $2,000; that said hotel building was next and adjacent to the southwest corner of said station-house, with only a small, as well as a clear and unobstructed space between the two buildings; that, on said 9th day of January, 1875, said station-house caught fire from and through the cracked, unsafe and dilapidated flue so constructed therein, as above set forth, and was thereby totally consumed; that while said station-house was burning, fire was communicated therefrom by the wind to the hotel building, whereby said latter building, with the furniture and other personal property therein contained, was also burned up, and wholly destroyed, without any fault or negligence on the part of the plaintiff.

The second paragraph contained substantially the same facts as the first, except that it charged that the defendant's servants and employees were in the habit of pouring oil on the kindlings and wood put in the stove as fuel, thus making quickly hot and blazing fires, which habit was fully known to the defendant, and that, on the morning of the said 9th day of January, 1875, the defendant, by its servants and employees, negligently and carelessly made a quick, hot and

blazing fire in the stove in the station-house by pouring oil over the kindlings and wood put therein, from which fire sparks and flames escaped through the cracks in the flue into which the stove-pipe entered, thus setting the station-house on fire and burning it up, and that while the station-house was so burning up, fire was blown by the wind from the same to, on and against the plaintiff's hotel building, setting fire to it, also, in that way, and consuming it, and the furniture and other personal property used therein.

Demurrers were severally overruled to both paragraphs of the complaint, and, issue being joined, the plaintiff obtained a verdict and judgment against the defendant for $3,000.

In the natural order of objections made to the proceedings below, the question of the sufficiency of the complaint is first presented. It is claimed that the facts averred in both paragraphs of the complaint disclosed only a case of the accidental burning of the station-house, and of the accidental spread of fire to the hotel building, from which it must be inferred that the negligence charged was not the proximate cause of the injury complained of.

It is not easy at all times to determine what are really proximate and what are only remote damages. That we must so use our own as not to injure another, is an ancient and axiomatic rule of the law, but it is often found to be very difficult and perplexing to make a just and reasonable application of this most excellent general rule. There must be some limit to the extent of liability for injuries even in cases of the grossest and most inexcusable negligence. In close cases, however, it is frequently very hard to determine just where the line between liability and non-liability for seeming negligence ought to be drawn.

The damages for which a party is, and upon principle ought to be liable, are those which are the natural or necessary consequences of his wrongful act. But where some other agency intervenes and extends the injurious effects of the wrongful act beyond the range of its natural or necessary consequences,

and beyond what could ordinarily have been anticipated, the party originally at fault is not responsible for such additional injurious effects.

As incidental to the improvements of the age in which we live, and to the vast amount of combustible material in daily use by the people of this country, injuries by fire have been the subject of much judicial investigation within the past few years, and have become a subject about which much has been recently said and written.   As applicable, however, to the particular question now before us, the authorities are not numerous, and some of the cases which have been brought to our attention are not in harmony with each other.   This want of harmony is, however, mainly between the older cases on the one side, and the more modern cases on the other, the tendency all the while having been towards either a non-liability, or a more restricted liability, for merely accidental fires.

By the common law of England, before the enactment of any statute on the subject, a person in whose house a fire originated, which afterwards spread to his neighbor's property and destroyed it, was compelled to make good his neighbor's loss by the fire.    But by a statute of 6 Anne c. 31, amended and substantially re-enacted by another statute of 14 Geo. III. c. 78, sec. 86, it was provided " That no action, suit, or process whatever, shall be had, maintained or prosecuted, against any person in whose house, chamber, stable, barn, or other building, or on whose estate any fire shall, after the said twenty-fourth day of June, [1774] accidentally begin, nor shall any recompense be made by such person for any damage suffered thereby ; any law, usage, or custom, to the contrary notwithstanding."

Blackstone, in his commentaries, after referring to the ancient common law doctrine on the subject of accidental fires, says :  " But now the common law is, in the former case, altered by statute 6 Ann., c. 3 [31], which ordains that no action shall be maintained against any, in whose house or chamber any fire shall accidentally begin ; for their own loss is suffi-

cient punishment for their own or their servant's carelessness." 1 Cooley's Blackst. Com. 431.

In the case of *Lansing* v. *Stone*, 37 Barb. 15, it was held that the common law of England on the subject of accidental fires, as modified by the statutes of 6 Anne and 14 Geo. III., *supra*, had become the common law of the State of New York, and, quoting Blackstone as above approvingly, further held that where a man's house or other building takes fire, even by his own or his servants' negligence, and the fire spreads to and consumes his neighbor's property, he can not be made liable for the latter's loss, upon the theory that the interest which a man has in preserving his own property ought to be considered a sufficient guaranty, as it is in fact the only one his neighbors have against his and his servants' negligence.

The case of *Ryan* v. *New York C. R. R. Co.*, 35 N. Y. 210, was a more recent New York case. The facts upon which that case rested were briefly, that the railroad company, either by the carelessness of its servants, or through the bad condition of one of its locomotives, set fire to one of its own wood-sheds in the city of Syracuse, which sheltered and contained a large quantity of wood. The plaintiff's house, standing at a distance of about one hundred and thirty feet from the shed, took fire from the sparks and heat thrown out by the burning shed and wood, and was thus entirely consumed. A considerable number of other houses and buildings were burned and destroyed by the spreading of the same fire. Upon proof of these facts the circuit court nonsuited the plaintiff, and the judgment was affirmed at the general term of the supreme court of the proper district. The cause was then taken to the Court of Appeals, where the judgment was again affirmed by the unanimous, as well as exhaustive, opinion of that court. The statutes of 6 Anne and 14 Geo. III., *supra*, were not referred to or relied upon in that opinion, but the conclusion reached was based upon the inference that the railroad company's negligence was only the remote, and hence not the proximate, cause of the plaintiff's loss.

The Pennsylvania Company *v.* Whitlock.

HUNT, J., delivering the opinion, and first giving some illustrations, said: "So if an engineer upon a steamboat or locomotive, in passing the house of A., so carelessly manages its machinery that the coals and sparks from its fires fall upon and consume the house of A., the railroad company or the steamboat proprietors are liable to pay the value of the property thus destroyed. (*Field* v. *N. Y. Central R. R.*, 32 N. Y. 339.) Thus far the law is settled and the principle is apparent. If, however, the fire communicates from the house of A. to that of B., and that is destroyed, is the negligent party liable for his loss? And if it spreads thence to the house of C., and thence to the house of D., and thence consecutively through the other houses, until it reaches and consumes the house of Z., is the party liable to pay the damages sustained by these twenty-four sufferers? The counsel for the plaintiff does not distinctly claim this, and I think it would not be seriously insisted that the sufferers could recover in such case. Where, then, is the principle upon which A. recovers and Z. fails?"

The answer which then followed to the inquiry thus suggested was, that in A.'s case the damages would be proximate, while in the case of Z. they would only be remote.

The case of *Pennsylvania R. R. Co.* v. *Kerr*, 62 Pa. St. 353 (1 Am. R. 431), was an action by Kerr against the company for the loss of his furniture in a hotel near the Pennsylvania railroad, which was destroyed by fire through the alleged negligence of the company's servants in running its locomotive. The fire was first communicated to a warehouse and from that to the hotel.

The verdict and judgment were in favor of the plaintiff, but, upon an appeal, the Supreme Court of Pennsylvania held that the damages were too remote, and, referring to, recognizing and approving the distinction observed between proximate and remote damages, in the case of *Ryan* v. *New York C. R. R. Co.*, *supra*, reversed the judgment. Weeks on *Damnum Absque Injuria*, at section 118, states the ac-

cepted doctrine to be that where, by the negligence of another, a building was burned, and the fire spread to and destroyed an adjoining house, the negligence was considered too remote to give the owner of the latter house a remedy for his loss against the party by whose negligence the fire originated. He then quotes from the case of *Morrison* v. *Davis*, 20 Pa. St. 171, as sustaining that doctrine, the following : "There are often very small faults which are the occasion of the most serious and distressing consequences. Thus, a momentary act of carelessness set fire to a little straw, and that set fire to a house, and, by an extraordinary concurrence of very dry weather and high winds, with this fault, one-third of a city (Pittsburgh) was destroyed. Would it be right that this small act of carelessness should be charged with the whole value of the property consumed?" And, continuing, says it has also been asked, " Should the careless act of the woman who originated the great fire at Chicago make her liable in damages for all the losses that resulted therefrom?"

Field, in his work on the Law of Damages, at section 50, states the doctrine on the subject of spreading fires in substantially the same language used by Weeks, and given as above.

Cooley on Torts, at p. 76, says : " How far one may be chargeable with the spread of a fire negligently started by himself, is one that has attracted no little attention in judicial circles, and led to some difference of opinion. In New York it is held that while the culpable party would be liable to the owner of an adjoining house to which the fire had spread, he would not be liable to one to whose house the fire should spread from the burning of the first; the court apparently being more influenced in their decision by the fact that the opposite doctrine would subject to a liability against which no prudence could guard, and to meet which no private fortune would be adequate, than by a strict regard to the logic of cause and effect. In Pennsylvania the same conclusion has been reached, and from similar considerations. But a dif-

ferent view prevails in England and most of the American States. The negligent fire is regarded as a unity : it reaches the last building as a direct and proximate result of the original negligence, just as a rolling stone put in motion down a hill, injuring several persons in succession, inflicts the last injury as a proximate result of the original force as directly as it does the first ; though if it had been stopped on the way and started anew by another person, a new cause would have thus intervened back of which any subsequent injury could not have been traced. Proximity of cause has no necessary connection with contiguity of space or nearness in time."

The cases of *Ryan* v. *New York Cent. R. R. Co.*, *supra*, and *Pennsylvania Co.* v. *Kerr*, *supra*, are cited as sustaining the doctrine recognized in New York and Pennsylvania respectively, but the learned author expresses the opinion in a note that the weight of these cases is somewhat diminished by the more recent cases of *Oil Creek, etc., R. W. Co.* v. *Keighron*, 74 Pa. St. 316, *Pennsylvania R. R. Co.* v. *Hope*, 80 Pa. St. 373 (21 Am. R. 100), *Webb* v. *Rome, etc., R. R. Co.*, 49 N. Y. 420 (10 Am. R. 389), *Pollett* v. *Long*, 56 N. Y. 200, and *Wasmer* v. *Delaware, etc., R. R. Co.*, 80 N. Y. 212 (36 Am. R. 608).

This implied criticism upon the Ryan and Kerr cases is not an unjust one. Both of those cases have been distinguished, and had assigned to them a rather restricted and qualified value as precedents, but neither one has been held to have been wrongly decided upon the facts upon which it especially rested by any of the cases above enumerated, or to have been without some support both in reason and in justice.

The case of *Milwaukee, etc., R. W. Co.* v. *Kellogg*, 94 U. S. 469, was an action by the latter against the former for negligently setting fire to its elevator standing on the bank of the Mississippi river in the State of Iowa, by means of which fire was communicated to the plaintiff's saw-mill and lumber, a distance of five hundred and thirty-eight feet, and such mill and lumber were also destroyed. The Supreme Court of the

United States held, that upon the facts as presented by the record, the railway company was liable for the damages sustained by Kellogg, declaring the true rule to be that what is the proximate cause of an injury is ordinarily a question for the jury, and not one either of science or of legal knowledge, and disapproving the Ryan and Kerr cases in so far as they might be construed as enunciating a different rule.

The facts upon which the case of *Fent* v. *Toledo, etc., R. W. Co.*, 59 Ill. 349 (14 Am. R. 13), was based were as follows: On the 1st day of October, 1867, a locomotive with a train of freight cars attached, all belonging to the defendant, while passing eastwardly through the village of Fairbury, threw out great quantities of unusually large cinders, and by that means set fire to two buildings and a lumber yard. One of the buildings thus set on fire was a warehouse near the track. The weather being very dry, and the wind blowing freely in that direction, the heat and flames extended to the house of the plaintiffs, a distance of about two hundred feet, and destroyed it and most of its contents. The evidence tended to establish great negligence in permitting fire to escape from the locomotive. The defendant demurred to the evidence, and the circuit court held the evidence insufficient to sustain the action. The Supreme Court of Illinois, declining to follow the Ryan and Kerr cases, and asserting that they stood alone in the narrowness of the rule they prescribe on the subject of proximate damages, reversed the judgment upon the evidence.

In the case of *Billman* v. *Indianapolis, etc., R. R. Co.*, 76 Ind. 166 (40 Am. R. 230), the Ryan and Kerr cases were also strongly disapproved by this court, but they were only incidentally referred to in that case as bearing on the general subject of damages resulting from negligence, and not because of any close analogy between them and the case then in hearing. We are, consequently, not irrevocably committed to any particular construction of those cases in their application to the class of cases to which they strictly belong.

In the Kerr case, the court, speaking through its chief jus-

tice, remarked that there may be cases in which the causes of disaster, though seemingly removed from the original cause, are still incapable of distinct separation from it; and where the maxim *causa proxima, non remota, spectatur*, is not controlled by either *time* or *distance*, but by *the succession of events*, and in that respect, at least, that case is in harmony with the great weight of authority. See, also, the cases of *Gagg* v. *Vetter*, 41 Ind. 228 (13 Am. R. 322); *Louisville, etc., R. W. Co.* v. *Krinning*, 87 Ind. 351; *Perry* v. *S. P. R. R. Co.*, 50 Cal. 578; *Baltimore, etc., R. R. Co.* v. *Dorsey*, 37 Md. 19; *Bachelder* v. *Heagan*, 18 Me. 32; *Stuart* v. *Hawley*, 22 Barb. 619; *Calkins* v. *Barger*, 44 Barb. 424; *Tourtellot* v. *Rosebrook*, 11 Met. 460; *Clark* v. *Foot*, 8 Johns. 421; *Barnard* v. *Poor*, 21 Pick. 378; 1 Thompson Neg., p. 147, sections 1 and 2; *Higgins* v. *Dewey*, 107 Mass. 494.

An examination of the authorities we have cited, in connection with others touching the subject under consideration, will make it apparent that railroad companies have generally been held to a stricter accountability for the negligent setting and the negligent spread of fires than merely private parties, and most, if not all, other corporations. The reason of this is the extraordinary use which such companies are permitted to make of fire as an agency in the transaction of their business. By their locomotives and almost endless succession of trains, they send forth in all directions burning, bristling, breathing, seething streams of fire, calculated, oftentimes, to inflict irreparable injury upon the citizen, if not inexorably restrained. These extraordinary privileges involve the necessity of very great care to prevent the setting or spread of fire from locomotives, and have justified the courts in holding railroad companies to a strict accountability for any neglect of proper care in that respect. Railroad cases are, therefore, not always safe precedents in cases of negligent, but not intentional, fires in dwelling-houses, offices and other similar places of business, where the risk of the owner often is as great, if not greater, than any of his neighbors, and where such unremit-

ting care, as is required in the management of locomotives, can not be reasonably expected.

As applicable to all classes of the spread of negligent but unintentional fires, and as deducible from what appears to us to be the decided weight of authority, we think it may be safely stated, as a general rule, that where such a fire as the natural, immediate and proximate consequence of its negligent beginning, extends to an adjoining or an adjacent building and consumes it, the party responsible for the commencement of the fire must bear the loss, but where some new and independent agency has intervened and caused the extension of the fire to other buildings, the person originally at fault can not be held liable. *Harrison* v. *Berkley*, 1 Strobhart, 525. Whether the negligent party can be held accountable for the burning of more remote buildings, and, if so, under what circumstances, are questions we have not fully considered, and concerning which this case requires no definite expression of an opinion.

We construe both paragraphs of the complaint in this case to mean that the appellant's servants and employees negligently, but nevertheless accidentally, set fire to the station-house adjacent to the appellee's hotel building, and that while the station-house was on fire and being thereby consumed, the wind intervened and blew some of the sparks and flames over onto the hotel building, thus communicating the fire also to it, and causing it, with the personal property described, to be also burned up and destroyed.

As thus construed, neither paragraph of the complaint charged, either in direct terms or in equivalent words, that the destruction of the hotel building was the natural as well as the immediate and proximate consequence of the burning of the station-house. On the contrary, the fair inference from the averments in both paragraphs was, that if the wind had not intervened as a new and independent agency, the fire would not have extended to and consumed the hotel building and other property connected with it.

The Pennsylvania Company v. Whitlock.

The unexpected intervention of the wind, even when the fire is voluntarily set upon the premises of the person setting it, has generally been accepted as the intervention of a new and independent agency, and this inference from the intervening force of the wind ought, we think, to have a much stronger and more general application to cases of merely accidental or unintentional fires. It is true, that in the case of *Insurance Co.* v. *Tweed*, 7 Wallace, 44, the Supreme Court of the United States refused to recognize the wind, which had carried sparks and flames from one building to another in that case, as the intervening of a new force or power, but that conclusion was reached as the result of the construction of a peculiarly worded policy of insurance, and not as an incident to any question of negligence, and can not, in consequence, be regarded as a precedent of any great value in a case like this. It is a matter, too, worthy of observation, that the fire complained of in this action did not originate in any defect in or mismanagement of any railroad machinery, but came from a stove used in an office for heating purposes only, and that in that respect this case stands upon a better footing than most of the railroad cases to which we have either generally or specially referred.

After the most mature consideration of every feature of the case before us, we feel constrained to hold that both paragraphs of the complaint failed to aver facts sufficient to justify the inference that the burning of the hotel building and other property of the appellee resulted as a natural, immediate and proximate consequence of the fire which caught in the station-house, and that for that reason the demurrers to both paragraphs ought to have been sustained.

Although the two cases are not analogous in every respect, the conclusion reached is in general harmony with our holding in the case of *Pittsburgh, etc., R. W. Co.* v. *Culver*, 60 Ind. 469, and other cases resting upon it. *Pittsburgh, etc., R. W. Co.* v. *Hixon*, 79 Ind. 111 ; *Louisville, etc., R. W. Co.* v. *Ehlert*, 87 Ind. 339.

The judgment is reversed, with costs, and the cause remanded for further proceedings.

ZOLLARS, C. J., having been at one time of counsel in this cause, expresses no opinion, and does not take part in the decision.

