## Thomas Y. Canby *vs.* George A. Frick.

A prayer that the jury, in estimating the sum to be allowed the plaintiff for his services, " *should be guided by the custom in such like cases,*" is defective, because it *assumes* the existence of such custom.

A judgment will not be reversed because of a failure to grant a prayer which ought to have been granted, when all the advantage the appellant could have derived from such prayer was given him in a prayer granted at the instance of the appellee.

A party who is neither a land broker nor had been employed by the defendant, has no right of action for services rendered in the sale of the defendant's land.

APPEAL from the Court of Common Pleas for Baltimore city.

*Assumpsit* by the appellee against the appellant, to recover for services rendered by the plaintiff to the defendant in the sale of a farm. Plea, *non assumpsit.*

1*st Exception.* The testimony and the prayer of the plaintiff, to the granting of which the defendant excepted, are fully stated in the opinion of this court.

2*nd Exception.* This was taken by the defendant to the refusal of the court (MARSHALL, J.,) to grant an instruction, that there is no evidence of any contract between the plaintiff and defendant, and the former is, therefore, not entitled to recover.

3*rd Exception.* The defendant asked an instruction, that if the jury believe the plaintiff was not a land-broker at the time

of the occurrences given in evidence, and that defendant did not employ the plaintiff in the sale to Evans, then the plaintiff is not entitled to recover; which the court refused to grant, and the defendant excepted and appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Wm. A. Talbott* for the appellant, argued:

1st. That there was no evidence from which the jury could infer that the plaintiff was employed by the defendant to find a purchaser for the land in question. The evidence shows that the plaintiff's whole action was at the request of and for the purchaser.

2nd. That the introduction of a purchaser to the defendant, unless at his request or by his authority, did not entitle the plaintiff to compensation, and *no implied assumpsit was created thereby.* 3 *Md. Rep.*, 201, *Beale vs. Creswell.*

3rd. That no custom was sufficiently proved which entitled the plaintiff to recover, the proof showing that the plaintiff not being a land-broker, did not come within the alleged custom, and if proved it is not a reasonable custom which this court will sustain. 6 *Md. Rep.*, 47, *Foley & Woodside, vs. Mason & Son.*

4th. That the court erred in the instruction granted, because it *assumes* that a custom had been proved and does not leave the fact to be found by the jury. 6 *G. & J.*, 70, *Crawford vs. Berry.* 3 *Md. Rep.*, 161, *Gaither vs. Martin. Ibid.*, 294, *Lewis vs. Kramer.* 4 *Do.*, 242, *Balto. & Susq. R. R. Co. vs. Woodruff.* 7 *Do.*, 300, *Balto. & Ohio R. R. Co. vs. Resley.*

5th. That there was no evidence from which the jury could infer a contract between plaintiff and defendant, and the defendant's first prayer should have been granted.

6th. The defendant's second prayer should have been granted, because the plaintiff could only recover, either from having been employed by the defendant in the sale or under the custom applying to land-brokers.

Canby *vs.* Frick.

*Wm. Shepard Bryan* for the appellee.

The prayer of the plaintiff embodies a clear legal proposition. Let us examine its different parts. The first section is, in effect, that if defendant employed the plaintiff to find a purchaser for the land, and the plaintiff found a purchaser, he is entitled to recover. For if the plaintiff introduced a person to whom, in consequence of that introduction, the defendant was enabled to dispose of the land, and did dispose of it, he introduced a purchaser. Can any argument assert that introducing a purchaser is not finding a purchaser? We refer to 34 *Eng. C. L. Rep.*, 267, *Wilkinson vs. Martin*. 32 *Do.*, 641, *Murray vs. Currie*. The next portion of the prayer is, in effect, that if no sum was agreed upon, (or, which is the same thing, if no sum was proved,) the jury must allow a reasonable sum. This is very clear. Then " in estimating this sum, they should be guided by the custom in such like cases." That is, they should be guided by what was usually paid—by the market price, so to speak. The customary price—the usual price—the market price—the price established by usage or custom in such cases, are equivalent expressions. The court do not instruct the jury as to the existence of any custom, nor could the jury have so understood it. The evidence applicable to this portion of the instruction was, that the "*usual charge*" was so much. Most clearly, the instruction leaves it to the jury to find from the evidence what this customary or usual charge was, or custom or usage about charging, in whatever way the idea may be expressed. Just as much so as if it said, "they should be guided by whatsoever they shall find the usual charge to be." The court do not even tell the jury they should give the usual sum, but merely, in estimating what a reasonable sum amounts to, they should be guided by what is customarily paid. This was something to assist them in their investigation.

If the prayer then was correct as a legal proposition, the next question is, whether there was evidence to support it. And certainly there was. Evans says, "defendant said he did not know what amount plaintiff was going to charge him, and desired witness to see Frick and get him to make the charge light," &c. And on cross-examination says, "he would swear

Canby *vs.* Frick.

that Canby agreed to pay plaintiff's commissions.''. It cannot be seriously denied, that this was evidence to be submitted to the jury of a contract between the parties, even if there were no other. If the above views be correct, the defendant's first prayer was properly rejected.

In the second prayer of the defendant, the jury are directed to make two inquiries:—First, whether the plaintiff was a land-broker. Secondly, whether he had been employed by the de-. fendant. The first of these inquiries was totally irrelevant. It could make no possible difference whether the plaintiff was a land-broker or not. There is nothing in the law to prevent persons other than land-brokers from making contracts of this kind. The second inquiry proposed had been already submitted to the jury by the plaintiff's prayer. The court, therefore, properly rejected it. But this is not the only objection to the prayer. Whatever may be the astute criticism of the learned counsel upon the language, it is clear that its obvious meaning is that it was incumbent on the plaintiff to prove:—First, that he was a land-broker. Secondly, that he made a contract with defendant. If this were not the intention in drawing the instruction, it is difficult to see why the clause about the land-broker was inserted. It surely cannot be supposed that the jury were obliged to consider a question which was to have no bearing on their verdict. No ingenuity can make it appear that it was not the design of the prayer that the jury should regard the two questions contained in it as decisive of the cause.

Le Grand, C. J., delivered the opinion of this court.

This action was instituted to recover for services rendered by the appellee to the appellant in the sale of a farm. It was proved by Mr. Evans, that in the year 1852, he purchased of appellant a farm for the sum of $10,000. The appellee took the witness to appellant to introduce him, a week or ten days before the purchase was consummated. In the early part of the negotiation, the appellant made it a part of his agreement, that the witness should pay to the appellee his commissions. This was not assented to, and the appellant *" agreed to pay plaintiff's* (appellee's) *commissions."*

It was proved by Thomas J. Gott that he is a land-broker, and that the usual charge by such brokers for making sales is a commission of two per cent.; some charge two and-a-half, or get it where it is offered; and also, that there is a custom in Baltimore, that if a broker takes a purchaser to a seller and introduces him, he is entitled to his commission from the seller when the sale is made: this custom extends to a class of persons whose business is buying and selling land, and known in Baltimore as land-brokers. The appellee is not a land-broker, but a clerk in the office of the Baltimore Cemetery Company.

The only testimony offered on behalf of the appellant was, that on a certain day, appellee called at his counting-room and inquired if he had a farm to sell, and if so, what he asked for it. The appellant replied he had, and would take for it $20 per acre for five hundred and forty acres; appellee then said, he knew a gentleman who wanted it.

On this state of case, the appellee asked the following instruction, which was granted by the court:

"That if the jury shall believe that the plaintiff was employed by the defendant to find a purchaser for a tract of land called Bailey farm, belonging to the defendant, and that the plaintiff did introduce to the defendant a person who, in consequence of that introduction, the defendant was enabled to dispose of said tract of land, and did dispose of it, that then the plaintiff is entitled to recover. And that if the jury cannot ascertain from the evidence the amount of compensation agreed to be paid to the plaintiff by the defendant, they should allow him a reasonable sum for his services, and in estimating this sum, they should be guided by the custom in such like cases."

Two objections are urged to this prayer:—*first*, that there is no evidence from which the jury could infer the plaintiff was employed by the defendant; and *second*, that the prayer took away from the jury the finding of the custom, in such like cases, which they were told they should be guided by; in other words, assumed the existence of a custom in like cases.

The first objection, in our opinion, is not tenable. The evidence on the part of the defendant was confined entirely to a single interview between him and the plaintiff. There may

have been others, and the other evidence in the case was sufficient to authorise the jury so to infer. The purchaser distinctly states, that in the early part of the negotiation, the defendant insisted he should pay the commissions of plaintiff. Why this, if he did not consider himself under an obligation to pay them? Again, the same witness is equally positive the defendant distinctly "*agreed to pay plaintiff's commissions.*" Evidence could not be more unequivocal. We think the second objection well taken. The proof of custom—waiving, for the sake of the argument, all inquiry as to its sufficiency, even as to a particular class—the plaintiff was by the proof shown and conceded on all sides not to be embraced in it. The only use which could be made of it was to enable the jury to form some idea of the rate at which similar services are compensated, not, however, *because of the custom*, but as a fact tending to show that services of a particular kind were esteemed in the community of a certain value. It would not be binding on the jury, but would be a fact to which they would have the right to look in making up their judgment. The prayer in taking from the jury the finding of the fact was error, and by assuming its existence, in the absence of all other testimony on the subject of the value of similar services, was clearly defective under the decisions of this court. *Balto. & Susq. R. R. Co. vs. Woodruff*, 4 Md. Rep., 242, and the cases there referred to. What we have said in regard to the prayer of the plaintiff disposes of the first prayer of the defendant. It was properly rejected. The second prayer should have been granted. For if the plaintiff was neither included within the class known as land-brokers nor had been employed by the defendant, he had no right of action. Had, however, the plaintiff's prayer been free from the defect to which we have alluded, we would not have reversed the judgment because of a failure to grant defendant's second prayer, inasmuch as the plaintiff's prayer gave him all the advantage he could have derived from his second prayer.

*Judgment reversed and procedendo awarded.*