ANNAPOLIS AND ELKRIDGE RAILROAD COMPANY *vs.* JOHN M. GANTT.

*Evidence in an action against a Railroad Company for Injury by Fire occasioned by one of its Engines—Onus Probandi—Who entitled to sue under Art. 77 of the Code for Injury by Fire occasioned by the Engines of a Railroad Company—Proximate Cause—Rule as to the Liability of Railroad Companies under the Code for Injury by Fire occasioned by their Engines or carriages—Province of the Jury—Practice in the Court of Appeals.*

In an action against a railroad company for so negligently managing one of its engines, that certain cord-wood and growing timber of the plaintiff whose land adjoined the road, was destroyed by fire emitted from the engine, the plaintiff, for the purpose of proving that the fire in question was occasioned by the defendant's engine, and as tending to prove negligence on the part of the defendant in the construction and management of its engines, may show that within a week before the fire in question, the engines of the

defendant in passing had scattered large sparks which were capable of set-
ting fire to combustible articles along the road, and that frequent fires, occa-
sioned by such sparks, had been put out within that time.

Under Article 77 of the Code, in an action against a railroad company for
injury done the property of the plaintiff by fire occasioned by the engines of
the defendant, it is not incumbent on the plaintiff to prove that the fire was
caused by the defendant's negligence; but the *onus* is cast on the defendant
to show affirmatively that it has used reasonable care to prevent the causing
of injury by fire from its engines.

Where cord-wood and growing timber have been destroyed by fire communi-
cated from the engine of a railroad company, the owner of the land where
the fire occurred, being in possession at the time, is entitled under section 2
of Article 77 of the Code, to sue the railroad company for the injury done
his property by the fire, although at the time of its occurrence, the land was
encumbered with a mortgage.

In an action under the Code, against a railroad company for injury done to
certain cord-wood and growing timber of the plaintiff, by fire occasioned by
the engine of the defendant, the fact that the fire began on the track of the
railroad and spread thence to the plaintiff's land adjoining, causing the
injury to his property, will not avoid the liability of the railroad company,
the evidence showing that the injury was the direct consequence of the fire
occasioned by the defendant's engine.

The safe rule as to the liability of railroad companies under Article 77 of the
Code, for damages by fire occasioned by their engines or carriages, is that
when their liability arises, it extends to all the near and natural conse-
quences of their wrongful act, and not to those which are remote, incidental
or exceptional.

In a case where the fire has not been communicated directly to the plaintiff's
property by sparks or cinders from the locomotive of the defendant; as
where it has spread from its first beginning, and thus been communicated
indirectly to the plaintiff's property, it is a question proper to be submitted
to the jury to determine from all the facts of the case, whether the injury
complained of is the natural consequence of the defendant's negligence, or
whether it has been caused by "some intervening force or power which
stands naturally as the cause of the misfortune."

An objection to a prayer, which was granted, "that there was no evidence of
the facts therein stated," not having been made in the Court below, will not
be entertained in the Court of Appeals.

APPEAL from the Circuit Court for Anne Arundel County.

This was an action brought on the 13th of April, 1872, by the appellee to recover damages for the destruction of certain cord-wood and growing timber, by fire occasioned by sparks and cinders emitted from a locomotive of the appellant. The defendant pleaded; 1st. Not guilty. 2nd. That the plaintiff was not seized of the land on which he alleges that the cord-wood and woods were destroyed by the defendant. 3rd. That the plaintiff was not the owner of the cord-wood and woods which he alleges in his declaration were destroyed. 4th. That the sparks and cinders from the locomotive of the defendant did not set fire to the plaintiff's premises, destroying his cord-wood and woods, as alleged in his declaration. 5th. Limitations. Issue was joined on these pleas.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—The plaintiff proved by John Bryan that he lived about two hundred yards from Gantt's land. It was in April, 1869, while in his garden at work, he saw the burden train of the defendant go up the road. In about ten minutes he saw smoke and hastened to the place, and saw fire burning in some sedge near the cross-ties of the railroad, about one foot off, and extending to a gulley where there was plenty of wood cut. The fire destroyed cord-wood and young chestnut timber where the wood had been cut out, of which he gave his estimate to the jury. There were many persons fighting the fire. Witness got there in fifteen or twenty minutes after seeing the smoke. He could see the track from his house, and saw no person passing on the track before or after the fire. The witness then said, in answer to a question by the plaintiff's counsel, that he saw the trains every day; that within a week of the time of the fire in question, he had observed the engines of the defendant throwing out sparks of pretty

good size, capable of setting fire to anything as dry as it was then, and had frequently run after them and put out fires within that time, but he could not say that he had ever seen such sparks from the locomotive "Annapolis," as he did not notice to see what engines were drawing the trains. The witness then further stated, in reply to questions on the part of the plaintiff, that he had seen coals of fire on the railroad track after the defendant's engines had passed, as large as a pullet's egg, within a week before this fire; that he did not see them dropping from the engines—only saw them after they had passed; but he could not say he had ever seen any such after the "Annapolis" had passed, as he did not notice the particular engines as they passed. (The plaintiff's counsel announcing that the object of this last offer, as to coals, was to shew, in connection with other proof in regard to ash pans, that the engines of the defendant, or some of them, had defective ash-pans.) The defendant's counsel objected to the said questions and answers as to the sparks and fires caused by them, and as to the coals of fire above specified; but the Court overruled the objection, and the questions were accordingly put and answered as aforesaid; to this ruling of the Court the defendant excepted.

*Third Exception.*—The plaintiff having rested his case, the defendant to sustain the issues on its part joined, proved by John S Sewell, that he was the engineer of the freight train which went up from Annapolis on the morning of the fire on the plaintiff's land; that it was in the first week of April; that the locomotive "Annapolis" was drawing the freight train; and that the said locomotive at the time, was in perfect order, properly constructed with suitable fixtures for preventing injuries by fire, and provided with a smoke-stack and spark-arrester, made by Baldwin & Company, of Philadelphia, of the most approved known pattern then in use for wood-burning engines—the spark-arrester being provided

with number eight West iron guage; that on the day in question the ash-pan of the said engine was in perfect order, and the engine throughout was in thorough condition; that he had a competent fireman on board, and himself had been an engineer for thirteen years, and the said locomotive, at the time, was driven with the utmost care and diligence; that when the freight train came down the road towards Annapolis, after one o'clock, he saw cord-wood burning near the road; that he had drawn a load of hay, in open cars, behind this engine, without injury, and that the "Annapolis" emitted no sparks which would be likely to cause fires along the road, but was remarkably free from such imperfections; that the ash-pan was not opened upon the road that day, and that no coals could fall out of an ash-pan when the engine was running, unless the pan was defective. When the ash-pan is in good order coals cannot fall out. He saw no sparks flying, and would have seen them if there had been any. He knew of no better smoke-stack than the Baldwin, unless it be the Bradley, one of which has been used by the company since eighteen hundred and fifty-four.

And the defendant further proved by John Beall, that he was the machinist of the company at the time of the fire; that the defendant had then in use four engines, and that the engine "Annapolis," at that time, was in thorough order; that it was his business to examine the engines particularly, and that he examined the "Annapolis;" that the ash-pan was close and in good order, as also the smoke-stack and spark-catcher; that the said spark-catcher and ash-pan were, at the time of the fire, suitable fixtures for preventing injury by fire, and of approved design, and in thorough order.

This witness also stated, on cross-examination, that he had known the cars to take fire several times when the Baldwin arrangement was in use, supposed to be from the sparks; that catchers are liable to choke; it is the

water from the steam that chokes them. Wood-burners will choke sooner than coal-burners.

After further testimony by the defendant, the plaintiff proved by Messrs. Linthicum and Cole, who testified that they had a long familiarity with locomotives, that locomotives that left coals upon the track when running, could not be in proper condition, and that the smoke stack of a wood engine, properly constructed, with proper spark catcher and properly managed, would·not ordinarily emit sparks that would live twenty feet from the top of the stack, but that every locomotive would emit some sparks. The plaintiff then asked each of the witnesses whether in his opinion, an engine which habitually threw out sparks, capable of setting fire to any combustible material along the line of the road, could be in a proper condition? The defendant objected to the question, upon the ground that there was no proof that its engines, at the time, habitually threw out such sparks; and also because there was no proof that the locomotive "Annapolis" ever threw out such sparks. The Court overruled the objection, and allowed the question, which was answered in the negative. The defendant excepted.

*Fourth Exception.*—The plaintiff offered the five following prayers:

1. If the jury believe from the evidence that the plaintiff's property was damaged by fire communicated from the defendant's engine, then they must find for the plaintiff, unless they further find that the injury complained of was committed without any negligence on the part of the defendant or its agents.

2. If the jury believe from the evidence that the plaintiff's property was damaged by fire communicated from the defendant's engine, then such fire is *prima facie* evidence of negligence on the part of the defendant.

3. If the jury believe that the fire originated from the defendant's engine, to exonerate the defendant from neg-

ligence, they must find that within a reasonable time before the fire in question, the defendant made a thorough examination of the engine, smoke-stack, spark-arrester and ash-pan by skilful and qualified mechanics in the branch of business, and that the same were then in sound and good condition, and so continued up to the time of the fire, so far as could be discovered.

4. If the jury believe from the evidence that the defendants ran engines upon their road, which, at the time of the fire complained of, habitually scattered fire from the ash-pans or smoke-stacks to such an extent as to endanger combustible material along the line of the road, it is a fact from which they may find negligence on the part of the defendants.

5. If the jury find the facts stated in the plaintiff's first prayer, he is not prevented from recovering, although the jury may find that before the time his property is alleged to have been destroyed, he had mortgaged the land to A. Randall, Esq.; if they also find that he was left in possession by the mortgagee, and that the time for payment of the debt has not expired, and that he purchased the land for the purpose of cutting the wood and timber growing thereon at the time.

And the defendant offered the seven following prayers:

1. That unless the jury shall believe from the evidence that the injuries complained of in the declaration, occurred within three years next before the commencement of this suit, the plaintiff is not entitled to recover.

2. That the plaintiff is not entitled to recover in this action in respect of the standing wood and timber spoken of in the declaration, because the legal title in the land on which the same was growing was not in the plaintiff when the fire took place, and has not been in him since.

3. That the plaintiff is not entitled to recover in this action, because the legal title in the land on which the wood and timber was then growing, and from which the

cord-wood was cut, was not in the plaintiff at the time the said cord-wood was cut, nor at the time of the fire, nor since.

4. That if the jury believe the plaintiff contributed in any way to the injury complained of, by the want of reasonable care and prudence in removing the chips and similar combustible or inflammable materials which he had near the defendant's track, then the plaintiff is not entitled to recover.

5. That the plaintiff is not entitled to recover in this action, although the jury may believe the fire was occasioned by the locomotive of the defendant; if the jury believe the defendant's engine, which occasioned such fire, was, at the time, properly constructed, in good order, with suitable fixtures for preventing injuries by fire, with a spark-catcher, such as was known by the company to have been used and approved of, and best calculated to prevent the emission of sparks, while allowing sufficient draft to create steam enough to propel the engine at proper speed; and that the said locomotive was used at the time on the road with such care and diligence as would be exercised by skilful, prudent and discreet persons having control of the engine, regarding their duty to the company and having a proper desire to avoid injuring property along the road.

6. That the burden of showing that the injury complained of was committed without any negligence on the part of the defendant, is not upon the defendant under the present form of action.

7. If the jury shall find from the evidence, that the fire commenced within the limits condemned for the use of the defendant, upon or very near the track of the defendant's railroad, in dry grass or sedge growing near the end of the cross-ties, and that it spread thence to some wood or rubbish or chips lying within the defendant's said boundaries, and that from these burning mate-

rials the fire then caught to the wood on the plaintiff's land, then the plaintiff is not entitled to recover, although the jury may believe that the first named fire was communicated by the defendant's engine, unless the jury shall find that said first fire was caused by gross negligence on the part of the defendant.

The Court, (HAMMOND, J.,) rejected the plaintiff's first prayer, and granted, in lieu thereof, the following:

"If the jury believe from the evidence that the plaintiff's property was damaged by fire communicated from the defendant's engine, then they must find for the plaintiff upon the issues joined on the first and fourth pleas, unless they find that the injury complained of was committed without any negligence on the part of the defendant or its agents, or unless they shall believe from the evidence that the plaintiff contributed to the injury complained of in the manner stated in the defendant's fourth prayer as granted by the Court."

And granted his second and fourth prayers, and rejected his third and fifth, and in lieu of the latter, granted the following:

"If the jury find for the plaintiff under his first prayer, then he is not precluded from recovering, although the jury may find that before the time his property is alleged to have been injured, he had mortgaged the land to A. Randall, Esq., if they shall find that he was left in possession thereof from January, 1868, up to and at the time of the injury."

And the Court granted the first and fifth prayers of the defendant, and rejected its second, third, fourth, sixth and seventh, and granted, in lieu of its fourth prayer, the following:

"If the jury believe that the plaintiff contributed in any way to the injury complained of, by want of reasonable care and prudence in not removing chips and similar combustible or inflammable materials, which they shall

find he had placed near the track of the defendant's road, then the plaintiff is not entitled to recover."

To the ruling of the Court, in rejecting the said prayers of the defendant, and in granting the second and fourth prayers of the plaintiff, and the said substituted prayers for his first and fifth prayers, the defendant excepted.

The jury rendered a verdict for the plaintiff for $871.20, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, ALVEY and ROBINSON, J.

*Alex. B. Hagner,* for the appellant.

As to the first exception it may be observed that the declaration specially averred, that *one* of the defendant's locomotives was so negligently managed, *on a particular day named,* that the sparks and cinders *from said locomotive,* set fire to the plaintiff's premises, &c.   This specific averment was explicitly denied by the fourth plea, and the plaintiff himself, in his testimony, expressly proves, that if the fire was caused at all by any locomotive of the company, it was caused by the locomotive *"Annapolis,"* which was drawing the freight train towards the Junction, on the day designated.   The issue then before the jury was, whether the defendant *on that occasion,* "so negligently managed" the locomotive *"Annapolis,"* that the sparks and cinders from *that* locomotive, set fire to the plaintiff's premises.   There was no proof that the *"Annapolis,"* had thrown out such sparks on the occasion referred to, or any other.   But that other engines, on other occasions, had set fire to leaves on other people's property, was surely irrelevant to the issue. *Balto. and Susq. R. R. vs. Woodruff,* 4 *Md.,* 254; *Robinson vs. Fitchburg, R. R. Co.,* 7 *Gray,* 94; *Sheldon vs.*

*Hudson River R. R. Co.*, 29 *Barb.*, 228; *Michigan Cent. R. R. Co. vs. Anderson*, 20 *Mich.*, 254; *F. and B. Turnpike Co. vs. P. and T. Railroad Co.*, 54 *Penn.*, 349; *Moore vs. The Bank of the Metropolis*, 13 *Peters*, 310.

The second exception, in addition to the point raised by the first exception, presents a further offer, as to a witness seeing coals of fire on the track, after the defendant's engines had passed. As in the previous offer, there was no attempt to identify the "Annapolis" as one of the engines referred to, and nothing to show any such dropping or sparks on the day of the fire. As far as the evidence went, it excluded the idea of there being any sparks or coals from the "Annapolis," or any other engine, &c., since none of the witnesses saw any on the road on that day.

This evidence was all offered *in chief*, and was simply an attempt to prove that the locomotive *"Annapolis" on the day specified*, set fire to the plaintiff's premises, by shewing that *some other engines on another occasion*, threw out sparks or coals, which *might have* set fire to *some one else's* property. The offer was in the highest degree obnoxious to the objection of *irrelevancy*.

In respect to the third exception; there is not a particle of proof that the engine *"Annapolis"* was in any respect unsafe. No witness ever saw it "throw out sparks" to a dangerous extent, and the proof is positive that it was in perfectly good order in all respects, and was properly handled.

And the issue to be found by the jury was, whether the sparks and cinders from *this* locomotive, at the *particular time*, set fire to the *plaintiff's* premises. The questions, therefore, which were asked of Messrs. Linthicum and Cole, were wholly irrelevant to the issue, since there was an entire failure to prove that the "Annapolis" ever threw out such sparks on *any* occasion.

The most favorable construction that could be given to the testimony in behalf of the plaintiff, came far short of warranting the jury in finding that the engine of the defendant "*habitually* threw out sparks," &c.

The rule allowing witnesses to testify as experts, confines their opinions to the case proved by the witnesses. 2 *Taylor's Ev.*, sec. 1278.

It is therefore improper to present a hypothetical case at variance with the testimony or unsupported by it; and to allow such evidence to go to the jury cannot fail to confuse them and work injustice.

The declaration is not in conformity with Art. 77, sec. 1, of the Code. It does not aver that the fire was "*occasioned* by the engines or carriages*" of the company, but charges a direct act of *setting fire* to the plaintiff's *premises*—the latter word implying in law, " houses or lands." *Bouv. Dic. "Premises." Wharton's Lexicon, "Premises."*

The plaintiff's *first* instruction, as granted by the Court, speaks of the fire as being "*communicated from the defendant's engine,*" which would include the case where the property of some third party or of the defendant had been set on fire by the engine, and the fire thence spread to the property of the plaintiff. This is not within the issue on the fourth plea, which requires the jury to find that the locomotive's sparks *set fire* to the plaintiff's *premises*.

It says imperatively that the jury *must* find for the plaintiff in the given cases which was calculated to mislead them in view of the complicated form of the instruction. *Peterson vs. Ellicott*, 9 *Md.*, 52; *Wilson vs. Smith*, 10 *Md.*, 71.

And the incorporation of the faulty instruction substituted for the defendant's fourth prayer, affects the correctness of this prayer.

The plaintiff's second prayer is obnoxious to the same objection as to the use of the words "*communicated from the defendant's engine.*"

The Act of 1838, incorporated in the Code, is in derogation of the common law. It changes the rule of evidence by releasing the plaintiff from proving negligence, and casts the *onus* upon the defendant, in cases of injury "by fire *occasioned by their engines and carriages*." *Balto. & Susqh. R. R. Co. vs. Woodruff*, 4 *Md.*, 259; *Rood vs. New York and Erie R. R. Co.*, 18 *Barb.*, 80; *Indianapolis R. R. Co. vs. Paramore*, 31 *Indiana*, 148; *Burroughs vs. Housatonic R. R. Co.*, 15 *Conn.*, 124; *Railroad Co. vs. Yeiser*, 8 *Barr*, 366.

The Courts will not extend this relaxation of the common law rule beyond the express requirement of the statute. This only related to injuries "*occasioned by the engines* or carriages" themselves. But a fire may be *communicated from* an engine, by passing through several intervening farms to that of a plaintiff; and the Legislature never designed to change the rules of evidence in such a case as that. The expression "*occasioned by the engines or carriages*" implies an injury directly caused by fire from the engines or carriages, and does not embrace the case of a fire resulting *indirectly* from a fire originally caused by the engines or carriages. Statutes in derogation of the common law are ever most strictly construed. 4 *Kent's Com.*, 469; *Dwarris on Statutes*, (695,) 9 *Law Library*; *Smith's Com.*, sec. 530; *Scaggs vs. Balt. & Wash. R. R. Co.*, 10 *Md.*, 275; *Hooper vs. Mayor &c. of Baltimore*, 12 *Md.*, 474; *Keech vs. B. & W. R. R. Co.*, 17 *Md.*, 45; *Greenwood vs. Greenwood*, 28 *Md.*, 386.

The declaration avers that the plaintiff was "*seized*" of the land over which the fire burned. The second plea declared that the plaintiff was *not seized* of the land and the plaintiff joined issue upon this plea. The third plea denied that the plaintiff was the owner of the cord-wood, &c. On the same day that the plaintiff received a deed of the land where the fire occurred, he mortgaged it to Mr. A. Randall to secure the purchase money, which is

still due. The plaintiff therefore parted with the legal title to this land on the day it was conveyed to him. He was not therefore *"seized"* of the land at the time of the fire. *"Seized"* implies seized *in fee.* 2 *Powell on Mort.,* (604,) *note Z,* 252 *a, note F; Robertson vs. Park,* 3 *Md. Ch. Dec.,* 68; *Towle vs. Ayer,* 8 *New Hamp.,* 57; 1 *Chitty's Plead ,* 228, *(marg.)*

The mortgagee has the legal title in the land mortgaged, and must maintain an action for injuries to the freehold. *McElderry vs. Smith,* 2 *H. & J.,* 72; 1 *Powell on Mortgages,* (56,) (288;) *Evans' Prac.,* 92; *Bean vs. Atlantic R. R. Co.,* 58 *Maine,* 81; *Vose vs. Handy,* 2 *Greenl.,* 333; *Stowell vs. Pike, et al.,* 2 *Greenl.,* 387; *Marvin vs. Dennison,* 20 *Verm.,* 662; *Jamieson vs. Bruce,* 6 *G. & J.,* 74.

The second prayer of the defendant should therefore have been granted, as to the standing wood.

The title to the wood which had been severed from the land was in the mortgagee, and the suit should have been brought in his name for the use of the party injured. *Leighton vs. Preston,* 9 *Gill,* 203; *Gore vs. Jenness,* 19 *Maine,* 53; *Frothingham vs. McKusick,* 11 *Shepley,* 403; 3 *U. S. Digest, p.* 31, *Mortgage, secs.* 74, 75, 77, 104; *Clarke vs. Abbott,* 1 *Md. Ch. Dec.,* 478; *McKim and Kennedy vs. Mason,* 3 *Md. Ch. Dec.,* 187.

The third prayer, therefore, should have been granted. The fact that the mortgagor had been left in possession, cannot affect the question as to the party in whose name the suit should be brought.

There can be no doubt that the plaintiff was not entitled to recover, if he contributed in any way to the injury complained of. *B. & O. R. R. Co. vs. Fitzpatrick,* 35 *Md.,* 32.

If he neglected to remove the chips and similar combustible or inflammable materials, which he had placed near the track of the defendant's road, and the fire spread to his wood by means of the litter there left by him near

the track, he certainly contributed to produce the injury. Since the bed of the road belongs to the plaintiff, and not to the railroad, which only possesses an easement over his land, the sedge and dry grass near the cross-ties should not have been left there by the plaintiff. *Blake vs. Rich,* 34 *New Hamp.,* 284.

The seventh prayer of the defendant correctly embodied the law. Neither at common law nor under the statute could the defendant be made liable for injury by fire, communicated to the plaintiff's property, through the property of other parties, which had been set on fire directly by the defendant's engines. 1 *Redfield on Railways, p.* 462, *Pl.,* 16; *Ryan vs. N. Y. Central R. R.,* 35 *New York,* 210; *Penna. R. R. Co. vs. Kerr,* 62 *Penna.,* 353; *Macon & Western R. R. vs. McConnell,* 27 *Georgia,* 481, and 31 *Georgia,* 133; *Barron, et al. vs. Eldredge, et al.,* 100 *Mass.,* 460; *Mangan vs. Atherton,* 1 *Law Rep.,* 239.

The Maryland statute confines the responsibility to injuries "*by fire, occasioned by their engines or carriages,*" which signifies injuries *directly* caused by fire from the engine or carriage itself.

*Henry Aisquith* and *William H. Tuck,* for the appellee.

The ruling of the Court below, to which the first exception was taken, was correct, 1st, Because the objection was made to all the questions and all the answers, and if any portion were admissible, the objection was properly overruled. *Budd vs. Brooke,* 3 *Gill,* 198. 2nd. Because the questions and the answers were admissible under the issues in the cause. The issue was, whether the fire had been occasioned by the defendant's engines. It would seem that no stronger proof could be offered—in the absence of an eye-witness to the fact of the burning at the very time—than that within a week he had seen the engines scattering large sparks, capable of doing the mis-

chief. That about that time he had put out a fire in the leaves, caused by these sparks. *Sheldon vs. Hudson River R. R. Co.*, 14 *N. Y.*, 218; *Field vs. N. Y. Central R. R. Co.*, 32 *N. Y.*, 349.

It was admissible, also, on the question of negligence, to shew the condition of the engines. The fact that the witness could not identify the "Annapolis" as one of the engines he had seen scattering sparks, does not affect the case. It is not alleged in the pleading, that that engine was the cause of this fire. In fact, there had been a train a few minutes before, from which the injury might have originated. *Chisty vs. Smith*, 23 *Verm.*, 666; *Cleaveland vs. Grand Trunk Railway Co.*, 42 *Verm.*, 449; *Piggot vs. Eastern Counties Railroad Co.*, 54 *E. C. L.*, 228; *Huyett vs. Phil. & Reading R. R. Co.*, 23 *Penn.*, 373.

The ruling to which the second exception was taken was correct, for the reasons which justified the ruling to which the first exception was taken; and also, because the evidence tended to shew, *in* connection with other proof, the condition of the locomotives.

The ruling to which the third exception was taken was correct, because there was evidence from which the jury might find that the engines of the company, including the "Annapolis," were in the habit of throwing off such sparks about the time of the fire. Where the opinion of an expert is desired in a case like the present, it is not necessary to establish, by direct evidence, the condition of things on which the opinion is to be given. The opinion would be worth nothing at all, unless the jury could find from the evidence that such a state of things existed as to warrant the opinion sought to be deduced, and in determining that fact, the same rules of evidence apply as are permissible in reaching conclusions and drawing inferences as to other matters of fact put in issue.

When, therefore, the plaintiff proved, as facts of frequent occurrence, what he and Bryan stated in reference

to the sparks, coals and cinders proceeding from the engines, and the shortness of time before the fire that they had put out fires, (frequently running after the engines for the purpose, according to Bryan,) not to mention the evidence of the defendant's witnesses, sufficient testimony was before the jury to authorize them to find that the condition of the engines was such as to make them unsafe and dangerous to property on the road, and to lay the foundation for asking the opinion of the witnesses as to the quality of such locomotives.

The prayer substituted by the Court for the *fifth* of the plaintiff raises the question, whether a mortgagor, left in possession of the land, can maintain an action of this kind, and may be considered together with the *second* and *third* prayers of the defendant; the second impliedly conceding the right to recover for the cord-wood, but denying it as to the standing wood and timber; and the third denying the right to recover for either standing or cut wood, because the legal title was not in the plaintiff at the time.

This land, containing fifty-nine acres, and Gantt's other farm of two hundred and sixty acres, were mortgaged to A. Randall, to secure three thousand dollars. Gantt purchased the land in October, 1867, to be put in possession in January, 1868, with knowledge on the part of Mr. Randall that he was buying the land for the purpose of cutting the wood. The deed and mortgage are of the same date, and constitute one transaction. The wood and timber belonged to Gantt, whether he had the legal title or not, for Mr. Randall took his mortgage with ten years' credit, not yet expired, with knowledge of his purpose to clear the land, raising an implied agreement that he should do so unmolested.

If the mortgagee would be estopped from such complaint, who else could make it? If Gantt cannot maintain this action, who else can? Surely not the mort-

gagee, who can neither prevent Gantt from cutting, nor claim the proceeds of the wood when sold. For to such an action the company might say that the beneficial interest in the wood and timber was in Gantt, no matter where the title to the land might be.

But the Code says: "Railroad Companies shall be responsible for injuries resulting in death, &c., &c., or *by fire, occasioned by their engines.*" *Art.* 77, *sec.* 1. The second section provides: "The damages caused by such injuries may be sued for and recovered by the *owner* of such stock, *or the person injured by fire.*" In the case of stock, the owner must sue; in the case of damage by fire, the person injured is to sue. It is no where said that the holders of the fee or the owner of the land where the fire occurred, must sue. The law recompenses the party who is injured. Who is that party in such a case as this? Surely it is the person entitled to cut and sell the wood and timber, whether that right attaches to him as mortgagor, or springs out of the circumstances of the sale and mortgage, and his known purpose in buying the land.

Apart from the Code and the special circumstances of this transaction, who had the right to sue for these damages—the mortgagor or mortgagee? Gantt must be considered the substantial owner of the land, and entitled to the rents, issues and profits, whatever they may be. If, as shown by the proof, he was clearing the land, the proceeds, would enure to him. A mortgagee, though holding the legal title, has not a completely vested estate, because it is defeasible at law at any time before forfeiture, and in equity afterwards. The mortgagor is the real owner of the property. *McElderry vs. Smith*, 2 *H. & J.*, 74 ; *Ford vs. Philpot*, 5 *H. & J.*, 315 ; *Wilkins vs. French*, 20 *Maine*, 111; *Myers vs. White*, 1 *Rawle*, 353 ; *Hilliard on Mortgages*, 150.

A mortgagee cannot have an account of rents and profits, received by the mortgagor although the security

may be insufficient. *Colman vs. The Duke of St. Albans*, 3 *Ves. Jr.*, 25; *Ex parte Wilson*, 2 *Veas. & Beam*, 252; *Cooper vs. Davis*, 15 *Conn.*, 556; *Chase vs. Palmer*, 25 *Maine*, 341.

A mortgagee cannot bring waste at law; such an action can only be instituted by a reversioner or remainderman. *Duvall vs. Waters*, 1 *Bland*, 569; *McLaughlin vs. Long*, 5 *H. & J.*, 113; *Hatch vs. Dwight*, 17 *Mass.*, 289.

A mortgagee in possession may be charged for waste, because his title is not complete, and the mortgagor may redeem, and has an interest in the freehold to protect; and when the mortgagor comes to redeem, he may have an account against the mortgagee in possession as to the rents and profits, so as to have them applied to the debt. *Rawlings vs. Stewart*, 1 *Bland*, 22, *note*; *Rickert vs. Maderia*, 1 *Rawle*, 328.

The seventh prayer of the defendant was properly rejected, because this fire was occasioned by the engines of the defendant in such manner as to exclude the objection that it was the remote and not the proximate cause of the damage. The fire originated on the company's land in sedge at the end of a cross-tie, and spread continuously through the grass and chips on the defendant's land to the land of the plaintiff. At common law an action would lie in such a case. *Filliter vs. Phippard*, 11 *Adol. & Ellis, N. S.*, 347; *Tuberville vs. Stampe*, 1 *Ld. Raymd.*, 264.

The question of *remote* and *immediate cause* seems never to have been definitely settled, but ruled according to the views of the Judge deciding the case, and to have depended mainly upon the special circumstances of the case under consideration. The rule laid down in *Insurance Company vs. Tweed*, 7 *Wallace*, 44, that the *immediate cause* of an act is that which happens without any *intervening power* to stand as the cause of the injury or

act complained of, appears to be the just and fair definition of *immediate cause.*

In this case, it being negligence in the company to have the dry sedge and chips upon the line of its track, (*Bass vs. Chicago, Bur. & Quincy R. R.*, 28 *Ill.*, 18,) through and by which negligence the defendant was damaged, it cannot be maintained that the damage was remote, and thereby remove the responsibility of the plaintiff except for gross negligence. *Cook vs. Champlain Transportation Co.*, 1 *Denio*, 91; *Illinois Central R. R. Co. vs. Mills*, 42 *Illinois*, 407.

The defendant's seventh prayer was rightly rejected under a proper construction of Art. 77, sec. 1, of the Code. *Balto. and Sus. R. R. Co. vs. Woodruff*, 4 *Md.*, 256; *Hart and others vs. Western R. R. Co.*, 13 *Met.*, 99; *Perley vs. Eastern R. R Co.*, 98 *Mass.*, 414; *Kellogg vs. Chicago and Northwestern Railway Co.*, 26 *Wisconsin*, 223.

BARTOL, C. J., delivered the opinion of the Court.

This is a suit by the appellee to recover damages for the destruction of cord-wood and timber by fire, alleged to have been occasioned by the engines of the appellant.

Four bills of exception were taken by the appellant, the first three present questions of evidence, and the fourth brings up for review the rulings of the Circuit Court upon the prayers. These will be considered in their order.

*First Exception.*—The plaintiff, who was sworn as a witness, having proved the destruction by fire on the 28th of April, 1869, of a quantity of cord-wood and growing timber on his land, contiguous to the railroad, on the north side; proved that the fire had commenced on the track of the road, in some dry grass at the end of the cross-ties, and had thence spread up the bank, through the bark, old stumps and litter, over the land

condemned for the defendant's road, and thence to the plaintiff's wood and timber, situated, a part of it within forty feet of the track, and extending to the distance of about two hundred feet. That everything was very dry, and there was a high wind from the south-west; that from a distance south of the road, he saw the smoke about twenty minutes after the freight train passed up; he also gave some evidence tending to prove the absence of other causes for the fire at that place, except the passage of the trains, to wit: "that there was no cutting in the woods that day, and no fire there, and that the cabin on the land occupied by laborers, was three hundred yards distant from the railroad; and stated if it was set on fire by any train, it was the freight train that set it on fire."

"The witness then stated in reply to questions of the plaintiff's counsel, that he had observed the engines of the defendant about that time; that within a week before he had seen them scattering large sparks in passing, which were capable of setting fire to combustible articles along the road; and that about a week before, he had put out a fire in the leaves caused by these sparks; but he could not say that he had ever seen any such sparks from the locomotive 'Annapolis,' which was the engine that was drawing the freight train on the morning of the fire."

Whereupon the defendant objected to the said questions, and to the said answers of the witness; but the Court overruled the objection, and admitted the evidence, and to this ruling, the defendant excepted.

We entertain no doubt that this was competent and admissible evidence, both for the purpose of proving that the fire in question, was occasioned by the locomotives; and as tending to prove negligence on the part of the defendant, in the construction and management of its engines. Evidence of this kind was held to be admissi-

ble in *Piggott vs. The Eastern Counties Railway Co.*, 54 *Eng. C. L.*, 228.

That was an action against the railroad company for the destruction of the buildings and farming utensils on the plaintiff's land, by fire alleged to be occasioned by the negligence of the defendants in the construction and management of their locomotives.

"In order to show that the fire was probably caused by sparks or particles of ignited coke emitted from the funnel, or from the fire-box of the engine by which the train was being propelled; the plaintiff's counsel proposed to ask a witness whether he had not on *other* occasions observed sparks or ignited matter to proceed from engines of the defendants, passing along the line adjoining the plaintiff's farm." The trial below was before ALDERSON, B., who admitted the evidence, and the question being reserved, was heard and decided by TINDAL, C. J., COLTMAN, MAULE and CRESSWELL, who all concurred in the opinion that the evidence was admissible. COLTMAN, J., said, "It appears from the report of the learned Judge, that the evidence in question was admitted, not for the purpose of showing a general habit of negligence on the part of the company, but to show that the injury might have been caused in the way suggested. It appears to me that the jury might reasonably infer that the fire was occasioned by sparks from the engine, and that the fact of the buildings being fired by sparks emitted from defendants' engine, established a "*prima facié* case of negligence, which called upon them to show that they had adopted some precautions to guard against such accidents." In *Cleaveland vs. Grand Trunk R. R. Co.*, 42 *Vermont*, 499, evidence of the same kind was decided to be admissible; and in *Sheldon vs. Hudson River R. R. Co.*, 14 *N. Y.*, 218, the Court of Appeals ruled in the same way. It has been argued by the appellants' counsel, that the decision last cited was "over-

ruled " in 29 *Barbour*, 226, when the same case afterwards came up before the Supreme Court. The case in 29 *Barbour* was before an inferior Court, and was ruled by three judges in the second judicial district; who were of course bound by the previous decision of the appellate Court. An examination of the cases will show that they are not in conflict. In 29 *Barbour*, the question of the admissibility of the evidence was not presented. The Court held that the testimony there offered was not sufficient in law to prove negligence on the part of the defendant. The *onus* by the law of New York being on the plaintiff.

Under the Code, Art. 77, sec. 2, it is not incumbent on the plaintiff in an action of this kind, to prove that the fire was caused by the defendant's negligence; but the *onus* is cast on the defendant to disprove negligence on its part, or rather to show affirmatively that it has used reasonable care to prevent causing injury by fire from its engines. The law on this subject is laid down by this Court in *Balto. & Susqh. R. R. vs. Woodruff*, 4 *Md.*, 242.

In that case, a question of evidence arose, and the decision is relied on by the appellant's counsel, as an authority in support of his objection to the testimony set out in this bill of exceptions.

There the evidence offered was "that before the occurrence of the fires upon the plaintiff's farm, fire had been communicated by the defendant's engines, to property of other persons on said road, and that it had been burned in consequence of such fire." The Court decided that such testimony was inadmissible, for the reasons stated on page 254. The question here presented is a very different one, and it seems to us that the ruling in Woodruff's case has no application to this. There the evidence offered was that before the occurrence of the fire in question, other property had been set on fire by the locomotives of the defendant, no time was specified, it might have been,

as the Court said, "six months before, or five years."
Besides, such testimony would simply tend to prove that
a passing locomotive is capable of setting fire to pro-
perty near the railway, but could throw no light upon
the question whether the fire complained of was in fact
caused by the locomotives, or tend to show the existence
of negligence in the particular case under consideration.
Here the evidence was confined to the time of the occur-
rence, *within a week of the happening of the fire on the
plaintiff's property;* and pointed directly to the condition
of the defendant's engines, tending to prove that they
were not in suitable repair at the time of the injury, and
we think both upon reason and authority it was admissi-
ble for the purposes mentioned.

The fact that the witness was unable to say that he
had observed sparks, &c., from the engine "Annapolis"
is no valid objection to admitting the testimony. The
declaration does not allege that the fire was caused by
that particular engine, and the statement by the witness
of his belief, that it was the freight train which caused
the fire, did not preclude the plaintiff from arguing or
the jury from finding that it was caused by some other
locomotive. It appears by the testimony of the same wit-
ness that three trains had passed that morning before the
fire, one of them, a passenger train, had passed up the
road only a few minutes before the freight train, and may
have caused the fire, although it was not discovered till
after the "Annapolis" had passed.

The second exception, presents the same legal ques-
tion, as the first, and for the reasons before stated we are
of opinion that the testimony of the witness *Bryan*, to
which objection was made by the defendant was properly
admitted.

No valid objection has been suggested to the testimony
of *Linthicum* and *Cole*, contained in the third bill of ex-
ceptions. It was offered to rebut the evidence produced

by the defendant, on the question whether its engines were of proper construction and in good repair at the time of the fire.   They were examined as experts, and a reference to the testimony of the plaintiff and of Bryan will show that the hypothetical case upon which their opinion was asked, had been abundantly established by proof; or to speak more accurately, evidence had been given from which the jury might so find, which is all that the rule of law requires as a basis for the admission of the testimony of experts.

Upon the prayers contained in the fourth bill of exceptions, the first material question presented for our consideration, is whether the plaintiff had such ownership of the property, as to entitle him to maintain this suit.

This question is raised by the *second* and *third* prayers of the defendant.   It appears by the proof that the land was conveyed to the plaintiff in fee, by a deed from Williams and wife, on the 29th day of October, 1867, and on the same day, he executed to Alexander Randall Esq., a mortgage of the same, with other land, to secure the sum of $3000, payable in ten years from date, with the interest thereon, from the 1st day of January, 1868, payable annually.

The appellant contends that the legal title to the land being in the mortgagee, the right of action was exclusively in him and not in the mortgagor, whose title being merely equitable, could give him no standing in a Court of law.   But in our opinion this is a mistaken view of the nature of the suit, which does not depend upon the ownership of the legal estate in the land.   The Code, Art. 77, sec. 2, declares that the damage caused by such injury may be sued for and recovered "*by the person injured by the fire.*"   It does not say that the holders of the legal estate in the land, where the fire occurs must sue; but the party injured by the fire.   This must be construed as referring to the substantial owner, whether

his title be legal or equitable. In a case like the present where the party holding the fee simple, has encumbered the estate by a mortgage, which is not due, and is in possession, there can be no difficulty in saying that he is the party injured by a fire which destroyed the cord-wood and growing timber upon the land. He is the substantial owner of the property destroyed. Chancellor KENT, (4 *Com.*, 160;) after stating the equity doctrine that the mortgage is a mere security for the debt, and only a chattel interest, and that until foreclosure, the mortgagor continues the real owner of the fee, proceeds to say, "The Courts of law have also by a gradual and almost insensible progress adopted these equitable views of the subject, which are founded in justice, and accord with the true intent and inherent nature of every such transaction. Except as against the mortgagee, the mortgagor while in possession, and before foreclosure, is regarded as the real owner, and a freeholder with the civil and political rights belonging to that character; whereas the mortgagee, notwithstanding the form of the conveyance, has only a chattel interest, and his mortgage is a mere security for a debt."

The same views are held in *Wilkins vs. French*, 20 *Maine*, 116, 119; *The City of Norwich vs. Hubbard*, 22 *Conn.*, 587. We refer also to 1 *Hilliard on Mortgages*, ch. 8, *p.* 151, and the authorities there collected in *Note b*. It is said this law does not prevail in Maryland, and *Jamieson vs. Bruce*, 6 *G. & J.*, 72, has been cited by appellant's counsel, as establishing a different doctrine. That was the case of a mortgage of personal property, where there was no agreement that the mortgagor should retain possession; the mortgagee took possession of the property without the knowledge or consent of the mortgagor, and it was held that the latter could not maintain trespass against him for the asportation; because as between the mortgagee and mortgagor, the legal property was in the former.

In the opinion of the Court delivered by Judge ARCHER, it is said, "although there may be cases in which a Court of Law, as well as a Court of Equity, would treat the mortgagor as the substantial owner, yet we are satisfied unless there be some agreement between the parties, the mortgagee is entitled to possession when he chooses to exercise the right."

In *Tucker vs. Sumwalt*, 34 *Md.*, 89, it was held that the mortgagee has no estate in the land, except the dry legal title, which cannot be affected by a lien of a judgment against him.

Looking at the nature of the estate held by the plaintiff, we are of opinion that he was the party entitled to sue, as the substantial owner of the property, and the party injured by the fire, within the meaning of the Code; and consequently, that there was no error in rejecting the second and third prayers of the defendant, and in instructing the jury "that if they should find for the plaintiff under his first prayer, he was not precluded from recovering, by reason of the mortgage to Mr. Randall, if they should find that he was left in possession of the property from January, 1868, up to and at the time of the injury."

The next material question argued at the bar, grows out of the fact, that the fire in this case began on the track of the railway, and spread thence to the plaintiff's land, causing the injury to his property. It is contended on the part of the appellant, that for such injury, the company is not liable under the Code, because it was the *remote* and not the *proximate* consequence of the defendant's negligence. In support of this proposition, we have been referred to *Ryan vs. New York Central R. R. Co.*, 35 *N. Y.*, 210, and *Penn. R. R. Co. vs. Kerr*, 62 *Pa.*, 353.

In those cases it was held, that "where the fire is communicated by the locomotive to the house of A, and

thence to the house. of B, there can be no recovery by the latter,'' and the decisions are based upon the ground, that the fire from the locomotive is not the proximate cause of the destruction of B's house; and his injury being merely the remote or indirect result of the wrongful act of the defendant, he cannot maintain an action according to the maxim *"causa proxima non remota spectatur."* There is no rule of the law better established or more universally recognized.    Whether it was correctly applied in the cases above cited, it is not material for us now to consider; because it is obvious that the facts of the present case clearly distinguish it from those.

It may be proper to observe, that the decisions. in 15 *N. York* and 62 *Pa.*, are not supported by any English case that we have seen, and are in conflict with several decisions both in England and in this country, which have been cited in argument by the appellee.    Among them, we may refer to *Piggot vs. Eastern Counties R. Co.*, 54 *E. C. L.*, 229; *Smith vs. L. & S. R. Co.*, 5 *L. R. C. P.*, 98; *Perley vs. Eastern R. R. Co.*, 98 *Mass.*, 418; *Hart vs. Western R. R. Co.*, 13 *Metc.*, 99; *Gifferd Feut, et al. vs. The Toledo, Peoria and Warsaw Railway Co.*

The last mentioned case was decided by the Supreme Court of Illinois in 1872, and is reported in the Albany Law Journal for 28th of September, 1872, (vol. 6, p. 226.) In the opinion delivered by C. J. LAWRENCE, the authorities are reviewed and the whole subject discussed with much ability.    Without attempting to reconcile the various decisions, which would be a fruitless and unprofitable task, or undertaking to define for all possible cases the exact limits and extent of the liability of railroad companies under our Code, for damages by fire occasioned by their engines and carriages, we may safely state the rule to be, that when their liability arises it extends to "all the near and natural consequences of their wrongful act, and not to those which are remote,

incidental or exceptional." *Law Reg* , *Sep. No.*, 1873, *page* 560, (Judge REDFIELD's note.) The rule is thus stated by Judge PARSONS : "The defendant is held liable for all those consequences which might have been fore- seen and expected as the results of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into consider- ation, (2 *Parsons on Contracts*, 456.) The rule was laid down substantially in the same terms by POLLOCK, C. B., in *Rigby vs. Hewitt*, 5 *Exc.*, 240. Other definitions might be cited from Judges and text writers; but this would serve no useful purpose. The rule is one which from its nature, and the class of cases where it applies, is incapable of precise definition. It has been correctly said by MILLER, J., speaking for the Supreme Court, "If we could deduce from the cases the best possible expression of the rule, it would remain after all, to decide each case largely upon the special facts belonging to it, and often upon the very nicest discriminations." He adds "one of the most valuable *criteria* furnished us by the authorities, is to ascertain whether any new cause has in- tervened between the fact accomplished and the alleged cause. If a new force or power has intervened of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote." *Ins. Co. vs. Tweed*, 7 *Wal.*, 52. To apply this criterion to the case before us, it seems too plain for argument that, according to the facts contained in the first and second bills of ex- ception, the injury to the plaintiff's property was the direct consequence of the fire occasioned by the defen- dant's locomotives. The fact that the fire began upon the side of the railroad and spread to the plaintiff's land, cannot in any just sense be said to render the injury suffered by him of a nature merely remote and incidental within the meaning of the rule. The fire consumed his property in its natural and direct course, without any

"intervening force or power to stand as the cause of the misfortune," and the injury suffered was therefore its proximate effect.

No case has been cited which sustains the defence here made by the appellant. In *Woodruff's Case*, 4 *Md.*, 242, the fire happened in the same way, and neither Court nor counsel thought of applying the rule of *causa remota*. So in *B. & O. R. R. Co. vs. Dorsey*, 37 *Md.*, 19, the fire originated in the same way, and it was not pretended that the injury to the plaintiff was not a proximate consequence of the defendant's negligence. The language of the Court, (page 24,) would seem conclusive of the question as it is here presented.

We may refer also to *Field vs. The N. Y. C. R.*, 32 *N. Y.*, 339, where the question was ruled in the same way, by the same Court which subsequently decided *Ryan vs. N. Y. C. R. Co.*, 35 *N. Y.*, 210.

We conclude, therefore, that there was no error in the Circuit Court's granting the *first* prayer of the plaintiff as modified, and in refusing the *seventh* prayer of the defendant.

In a case where the fire has not been communicated directly to the plaintiff's property by sparks or cinders from the locomotive; as where it has spread from its first beginning, and thus been communicated indirectly to the plaintiff's property; it is a question proper to be submitted to the jury to determine, from all the facts of the case, whether the injury complained of is the natural consequence of the defendant's negligence, or whether it has been caused by "some intervening force or power, which stands naturally as the cause of the misfortune;" and we do not understand that in this case the Circuit Court, by its action on the prayers, took this question from the jury.

The objection made in this Court to the plaintiff's fourth prayer, which was granted, "that there was no

evidence of the facts therein stated," not having been made below, cannot under our rules be entertained here. But even if it had been distinctly made at the trial, it could not prevail, as the bills of exceptions contain ample evidence to justify the granting of the prayer.

Having disposed of all the questions presented by the appeal, and finding no error in the rulings of the Circuit Court, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 17th December, 1873.)