Arnd, *et al. vs.* Amling.

FRANCIS ARND and FREDERICK BURGER *vs.* GEORGE AMLING.

*Practice—Admissibility of the Testimony of an Alleged Atheist—Inadmissibility of Parol Evidence as to a Mortgage—Evidence in an Action for Damages for Injury to Real Estate.*

In the trial of the case, the plaintiff offered as a witness a person to whose competency the defendants objected, because he did not believe in God, and that under his dispensation he would be morally accountable for his actions, and be rewarded or punished therefor either in this world or the world to come; and they offered to prove by witnesses that about one year previously, the person objected to as a witness had so expressed himself to them and to several others in their presence, on two or three different occasions. The Court below, before hearing said witnesses, allowed the plaintiff's witness to be sworn on his *voir dire*, and enquired of him, whether or not he believed in God, and that under his dispensation he would be held morally accountable for his acts and punished or rewarded therefor either in this world or the world to come; and the said witness having answered affirmatively, the Court below offered to

Arnd, *et al. vs.* Amling.

allow the defendants to produce any testimony to contradict that of the plaintiff's witness, which the defendants declined to do. Whereupon the plaintiff's witness was sworn to testify in the case, to which the defendants objected, and their objection being overruled, they excepted. HELD:

That there was in this course of examination a departure from what is the most approved modern method, yet inasmuch as the defendants were offered an opportunity to produce contradictory evidence, which they declined, it was not a substantial error, by which they were injured.

Parol evidence cannot be offered by the defendants of the existence of a mortgage on the plaintiff's property, in an action for damages against them for injury alleged to be done to it by them, while making improvements upon a lot adjacent to the plaintiff's house. The original instrument, or certified copy of the record is the proper evidence of a mortgage, if any such exist; and its non-payment can only be satisfactorily established by producing the legal evidence of the mortgage or accounting for its absence, and showing it had not been released.   But the record evidence offered by the defendants, of such mortgage on the property alleged to be damaged, and the non-payment of the debt secured thereby, cannot be admitted to reduce the amount of damages.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., BOWIE, BRENT, GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*Frederick C. Cook,* for the appellants.

The appellants submit that as every person offered as a witness in a Court of justice is *prima facie* presumed competent, and the burden of establishing incompetency lies upon the party objecting upon that ground, it was therefore proper for the Court to have allowed defendants to have established the incompetency of the person offered as a witness by proof of his declarations previously made,

that he was an infidel and non-believer in the existence of God. *Decl. of Rights of* 1867, *Art.* 36; 1 *Greenleaf Ev., sec.* 370; 1 *Whart. Crim. Law,* (7th Ed.,) *secs.* 797, 798; *Atwood vs. Welton,* 7 *Conn.,* 66; *Curtis vs. Strong,* 4 *Day,* 51; *Jackson vs. Gridley,* 18 *Johns.,* 98.

As to the admissibility of evidence that the plaintiff's house and lot were incumbered by a mortgage overdue and unsatisfied, the appellants submit, that any testimony tending to prove that the possession of the plaintiff, was of a less beneficial kind than that alleged and testified to by the plaintiff, should be admitted to diminish or mitigate damages that would otherwise be awarded to the plaintiff for the injury sustained. *Sterrett, Ex'r vs. Kasten,* 1 *Ala. Select Cases,* 404; *Seely vs. Alden,* 61 *Pa. St.,* 302.

Now admitting that under the ruling in the case of *Annapolis & Elk. R. R. Co. vs. Gantt,* 39 *Md.,* 115, the mortgagor before default, is to be treated as substantial owner of the property; still, after default, the possession of the mortgagor is, at law, that of a tenant at will, and only entitled to possession by sufferance of the mortgagee, and liable to be ejected at any moment. *George's Creek Coal and Iron Co. vs. Detmold,* 1 *Md.,* 225; *Pettingill vs. Evans,* 5 *N. H.,* 54.

That a reversioner or lienor, may support an action for an injury done to the reversion or security, though the same may be also injurious to the possession, we refer to the following cases: *Jesser vs. Gifford,* 4 *Burr.,* 2141; *Tucker vs. Newman,* 11 *Ad. & El.,* 40; *Raine vs. Alderson,* 4 *Bing., N. S.,* 702; *Munford vs. Oxford & R. R.,* 1 *Hurlst. & N.,* 34; *Baxter vs. Taylor,* 4 *B. & Ad.,* 72; *Page vs. Robinson,* 10 *Cush.,* 99; *Hapgood vs. Blood,* 11 *Gray,* 400; *Yates vs. Joyce,* 11 *Johns. R.,* 236; *Lane vs. Hitchcock,* 14 *Johns. R.,* 213; *Van Pelt vs. McGraw,* 4 *Comst.,* 110.

*D. Meredith Reese,* for the appellee.

The Court below did not err in allowing the witness objected to, to be sworn upon his *voir dire.* Competency is always presumed. Expressions made by him to others, cannot be admitted against his oath to affect his competency; if admissible at all, they would only be as to his credibility. *R. vs. White,* 1 *Leach,* 430; *Maden vs. Catanach,* 7 *Hurlstone & Norman,* 360; *R. vs. Serva,* 2 *Carrington & Kirwin,* 56.

Even admitting, for the sake of argument, that the witness offered expressed himself as alleged, still the alleged time of said expression was too remote. *Brock vs. Milligan,* 1 *Wilcox,* 126; *Swift's Evidence,* 48; 6 *Shep'l,* 157.

The Court did not err in sustaining the objection of the plaintiff by his counsel to the question of the defendants by their counsel, asked of the witness Amling, "whether the property mentioned in his testimony as owned by him and injured by the defendants was mortgaged or not; and if yea, to whom, and whether said mortgage had been paid off or not?" The rule of law requires the best evidence to be produced. *Young vs. Mertens,* 27 *Md.,* 114; *Higgins, et al. vs. Carlton and Scaggs,* 28 *Md.,* 115; *Mullikin vs. Boyce,* 1 *Gill,* 60; *Calvert vs. Cox,* 1 *Gill,* 95; *Trundle vs. Williams,* 4 *Gill,* 313.

The certified copy of the mortgage was not admissible as evidence. The mortgagor is the substantial owner of the property, and continues so until foreclosure.

The Courts of law have, by a gradual and almost insensible progress, adopted the equitable views of the subject, which are founded on justice and accord with the time, interest and inherent nature of every such transaction. 4 *Kent Com.,* 160; *Annapolis and E. R. R. Co. vs. Gantt,* 39 *Md.,* 140; *Tucker vs. Sumwalt,* 34 *Md.,* 89; *Kelly's Case,* 32 *Md.,* 44.

Bowie, J., delivered the opinion of the Court.

The appellee sued the appellants in the Court of Common Pleas in an action sounding in damages for carelessness and negligence of the appellants, in preparing to construct and constructing a house of the appellants adjoining the house of the appellee, whereby the lives of the appellee and family were endangered, and in a second count for damages done to the house of appellee, whereby the house was much injured, and the appellee sustained great loss, etc.

Issues were joined upon general and special pleas, the forms of which are not involved in this appeal, or material to the questions presented by the bills of exception.

The appellee, to sustain the issues on his part, offered as a witness a person to whose competency the defendants objected for want of religious faith.

In the language of the bill of exception, "because the said witness did not believe in God, and that, under His dispensation, he, the said witness, would be morally accountable for his actions, and be rewarded or punished therefor, either in this world or the world to come," and offered to prove by witnesses that about one year previously the witness objected to had so expressed himself to them, and to several others in their presence, on two or three different occasions. The Court, *before hearing said witnesses*, allowed the appellee's witness to be sworn upon his *voir dire*, and inquired of him whether or not he believed in God, and that, under His dispensation, he, the said witness, would be held morally accountable for his acts, and punished or rewarded therefor, either in this world or in the world to come, and the said witness having answered affirmatively, the Court below offered to allow the defendants to produce any testimony to contradict that of the appellee's witness, which the appellants' counsel declined to do; whereupon the appellee's witness was sworn to testify in the case, to which the appellants objected, and their objection being

Arnd, *et al. vs.* Amling.

overruled, prayed leave to except. The point raised by this bill of exception is both novel and interesting in this State, as no decision of this Court has been cited by the counsel on either side, and, it is presumed, none exists.

Two questions are involved in this exception:

First. Whether the witness objected to should have been sworn and examined at all.

Secondly. If examined, whether he should not have been examined in reply to the testimony impeaching his competency, and not before.

The general rule regarding the mode of ascertaining and determining the competency of witnesses objected to on account of "*insensibility to the obligations of an oath*, from defect of religious sentiment and belief," is prescribed with great precision by the elementary writers, and more recent authors on the law of evidence. *Mr. Greenleaf, vol.* 1, *chap.* 2, *sec.* 370, treating of the competency of witnesses, says: "The burden of proof is not on the party adducing the witness to prove that he is a believer, but on the objecting party to prove he is not." *   *   *   *

"The ordinary mode of showing this is by evidence of his declarations previously made to others, *the person himself not being interrogated;* for the object of interrogating a witness in these cases before he is sworn is not to obtain knowledge of other facts, but to ascertain from his answers the extent of his capacity, and whether he has sufficient understanding to be sworn."

In a very elaborate note to this section, the cases of modern date, both English and American, are collected and summarized, in part, as follows:

"The witness himself is never questioned in modern practice as to his religious belief, though formerly it was otherwise." (1 *Swift's Dig.,* 739; 5 *Mason,* 19; *Amer. Jur., vol.* 4, *p.* 79, *note.*) "It is not allowed even after he has been sworn." (*The Queen's Case,* 2 *B. & B.,* 284.) *   *   *   *   *   * "The old cases, in which the witness

himself was questioned as to his belief, have on this point *been overruled."* Note 1, sec. 370, *Greenleaf's Evid., Part III, vol.* 1. *Vide* also, 1 *Whart. Crim. Law, sec.* 796, 797, 798, *and notes.*

*Taylor,* in his work on *Evidence,* treats very briefly on the subject of defect of religious faith. After citing *Greenleaf* for the general proposition that defect of religious belief is never presumed, and the burthen of proof is on the objecting party, he remarks :

" One mode, and perhaps the least objectionable mode, of proving that a witness is incompetent to take an oath on the ground of want of religious belief, is by furnishing evidence of his atheistical declarations previously made to others, but the witness may himself be interrogated upon the subject, either before he is sworn at all, or after he has been sworn upon the *voir dire,* or even, as it would seem, after having been sworn in the cause." 2 *Taylor's Evidence, p.* 1201, 1250.

These eminent writers concur in the general rule as to the best mode of ascertaining the competency of a witness objected to for want of religious belief, but differ as to its exceptions.

It is the province and duty of the Judge to decide all questions respecting the admissibility of the evidence. This admissibility depends often upon a disputed fact, which it is for the Judge alone to determine. The Judge merely decides whether there is *prima facie* any reason for presenting it at all to the jury, and his decision on this point, if erroneous, may be reviewed by the Court above. In all these cases, however, after the evidence has been finally admitted, its credibility and weight are entirely questions for the jury, who are at liberty to consider all the circumstances of the case, including those already proved before the Judge, and to give the evidence only such credit as, upon the whole, they may think it deserves. 1 *Taylor's Evidence, p.* 36, sec. 22.

The inquiry into the competency of the witness, being preliminary and not final, conducted by the Court to ascertain the condition of the witness' mind in a matter of creed, the mode of proceeding was discretionary with the Judge, if not contrary to law. According to the presumption of law, the witness was competent to be sworn, and having purged himself by his oath of the imputation of infidelity, the Judge offered to allow the defendants to produce any testimony to contradict the witness.

There was, in this course of examination, a departure from what is said by the elementary writers and the more recent decisions elsewhere to be the most approved modern method, yet it does not appear to be a substantial error—one by which the defendants were injured—inasmuch as they were offered an opportunity to produce contradictory evidence, which they declined: *volenti non fit injuria.* There was no exclusion of evidence offered by the defendants. They were offered the largest latitude to contradict or impeach the witness sworn, which they declined to accept, and stood upon a point of order, or legal etiquette in practice.

There are occasions in which the order of testimony is of essential importance, and others in which liberal discretion must be allowed the Judge. In this case we think no injury has been inflicted on the appellants by the ruling on this exception.

The second and third bills of exception involve the admissibility of evidence, proposed to be offered by the appellants, to show the *quantum* or extent of the interest of the appellee on the property, the injury to which is the cause of action in the second count of the *narr.*

The object of the question excepted to by the appellee, in the second bill of exception, was to show by parol proof, the existence of a mortgage on the property alleged to be injured, and its non-payment.

The questions proposed to be asked by the appellants, do not appear to have been founded on anything testified to

by the witness in chief, or on his cross-examination, but seem to have been proposed by the appellants to the appellee, making him *pro hac vice* their own witness, without laying any foundation for proving by parol the outstanding mortgage.

The original instrument or a certified copy of the record was certainly the proper evidence of the mortgage, if any such existed, and its non-payment could only be satisfactorily established by producing the legal evidence of the mortgage or accounting for its absence, and showing it had not been released.

But the competency or materiality of the evidence, not the mode of proof, is presented by both the second and third exceptions.

In the latter, the appellants offered record evidence of a mortgage on the property alleged to be damaged, and the non-payment of the debt secured thereby, to reduce the amount of damages.

The theory on which this evidence was offered, is, that a mortgagor in possession after forfeiture can only recover for injury to the property mortgaged, to the extent of his residuary interest.

This question we think, has been concluded by the decision of this Court in the case of the *Annapolis & E. R. R. Co. vs. Gantt,* 39 *Md.,* 140.

Although the action in that case was brought under a section of the Code, providing for the indemnification of a class of persons injured by fire, produced by engines on railroads, yet the Court in construing that section, considered the rights of mortgagors generally, and held them to be the substantial owners of the property, and as such, entitled to relief. Adopting the language of Chancellor KENT, they said, "Except as against the mortgagee, the mortgagor, while in possession, and before foreclosure, is regarded as the real owner, and a freeholder with the civil and political rights belonging to that character;

Freidenrich *vs.* Balto. & Ohio R. R. Co.

whereas, the mortgagee, notwithstanding the form of the conveyance has only a chattel interest, and his mortgage is a mere security for a debt."

This reasoning, covers not only the right of action, but in our opinion, the question of damages, inasmuch as the mortgagor is as much injured by the depreciation of the property, if any, as the mortgagee.

To whatever amount the security for the debt is impaired, to that extent the mortgagor remains liable to the mortgagee.

If the property is destroyed, or reduced in value by the injury complained of, the mortgagor's means of paying the debt are lessened "*pro tanto.*"

Whether, therefore, we regard the mode of proof or the substance of the evidence proposed to be submitted by the appellants, in the second and third bills of exception, we think the Court below was right in its conclusions.

*Judgment affirmed.*

(Decided 10th March, 1880.)